1   HEATHER E. WILLIAMS, CA Bar #122664
    Federal Defender
2   PEGGY SASSO, Bar #228906
    Assistant Federal Defenders
3   2300 Tulare Street, Suite 330
    Fresno, California  93721-2226
4   Telephone: (559) 487-5561

5   Attorneys for Defendant-Petitioner
    JUSTO MATA BUSTOS

6

7

8               IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,          )  No. 1:08-cr-0297 LJO
                                       )
12             Plaintiff-Respondent,   )
                                       )
13  vs.                                )  DEFENDANT'S REPLY TO GOVERNMENT'S
                                       )  RESPONSE TO DEFENDANT'S 28 U.S.C.
14  JUSTO MATA BUSTOS,                 )  § 2255 MOTION
                                       )
15             Defendant-Petitioner.   )  Oral Argument Requested
    _____   )

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES……………………………………………………i

I.  INTRODUCTION...................................................................... 1

II.  ARGUMENT.............................................................................. 1

   A.  Kidnapping as Defined by 18 U.S.C. § 1201(a)(1) Does Not
       Qualify as a Crime of Violence under 18 U.S.C. § 924(c)(3)(A)............ 1

   B.  Following the Reasoning of *Johnson II*, as Affirmed by
       *Welch v. United States*, 136 S. Ct. 1257 (2016), and Given
       Binding Ninth Circuit Precedent, the Residual Clause Codified
       at 18 U.S.C. § 924(c)(3)(B) Is Unconstitutionally Vague...................... 9

       1.  This Court Must Use the Categorical Approach to
           Assess Whether Bustos' Conviction Qualifies as a
           Crime of Violence Under § 924(c)......................................10

       2.  Under the Reasoning of *Johnson II*, the Residual
           Clause Codified at 18 U.S.C. § 924(c)(3)(B) is
           Unconstitutionally Vague....................................... 14

           a.  The Lack of Enumerated Offenses Renders
               § 924(c)'s Residual Clause More, Not Less
               Vague, than the ACCA's Residual Clause............... 16

           b.  If § 924(c)(3)(B) is Narrower than
               § 924(e)(2)(B)(ii), It Is a Distinction Without
               a Difference.................................................18

           c.  The Constitutionality of a Statute is Not
               Determined by the Degree of Difficulty
               the Supreme Court Has Historically Had
               Interpreting It............................................... 20

           d.  Under the Categorical Approach, the Residual
               Clause is Either Unconstitutional in All
               Applications, or None.................................. 20

           e.  The Unconstitutionality of § 924(c)'s Residual
               Clause Does Not Call Into Question the
               Application of Qualitative Standards to Real
               World Conduct Any More than the
               Unconstitutionality of § 924(e)'s Residual
               Clause Did.................................................22

## <u>TABLE OF CONTENTS</u>

**Page(s)**

    C.      Because *Johnson II* Announced a New Rule that is
Applicable to the Residual Clause of 18 U.S.C. § 924,
Bustos' § 2255 Motion is Timely.......................................................... 23

III.      CONCLUSION ................................................................................................26

**TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Berry v. United States*
___ F.3d ___, 2016 U.S. App. LEXIS 12176 (9th Cir. 2016)................................. 12, 26

*Bowden v. Kemp*
774 F.2d 1494 (11th Cir. 1985)........................................................ 12

*Butler v. Curry*
528 F.3d 624 (9th Cir. 2008) ......................................................... 24

*Chatwin v. United States*
326 U.S. 455 (1946) ................................................................3,4, 6

*Delgado-Hernandez v. Holder*
697 F.3d 1125 (9th Cir. 2012) ....................................................... 7, 8

*Descamps v. United States*
133 S. Ct. 2276 (2013) ................................................................20

*Dimaya v. Lynch*
803 F.3d 1110 (9th Cir. 2015) ................................................... *passim*

*Godfrey v. Georgia*
446 U.S. 420 (1980) ...................................................................25

*Golicov v. Lynch*
___ F.3d ___, 2016 U.S. App. LEXIS 17121 (10th Cir. Sept. 19, 2016).....  ........... *passim*

*Hart v. Massanari*
266 F.3d 1155 (9th Cir. 2001) ........................................................ 12

*In re Pinder*
824 F.3d 977 (11th Cir. 2016) .................................................... 19, 26

*Johnson v. United States*
135 S. Ct. 2551 (2015) ...........................................................*passim*

*Johnson v. United States*
559 U.S. 133 (2010).....................................................................2

*Leocal v. Ashcroft*
543 U.S. 1, 125 S. Ct. 377, 160 L. Ed. 2d 271 (2004) .............................11, 13, 14, 19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**TABLE OF AUTHORITIES**</u> **(Cont'd)**

**Page(s)**

**FEDERAL CASES (Cont'd)**

*Mathis v. United States*
136 S. Ct. 2243 ( 2016) ....................................................................................... 20

*Maynard v Cartwright*
486 US 356 (1988) ............................................................................................. 25

*Schwab v. Sec'y, Dep't of Corr.*
507 F.3d 1297 (11th Cir. 2007) ........................................................................ 12

*Shuti v. Lynch*
828 F.3d 440, 2016 U.S. App. LEXIS 12500 (6th Cir. 2016) .................................. *passim*

*Stringer v. Black*
503 U.S. 222 (1992) ........................................................................................... 25

*Tanner v. McDaniel*
493 F.3d 1135 (9th Cir. 2007) ........................................................................... 24

*United States v. Amparo*
68 F.3d 1222 (9th Cir. 1995) ........................................................................ 10, 11

*United States v. Benally*
___F.3d___, 2016 U.S. App. LEXIS 13885 (9th Cir. 2016) .................................... 10

*United States v. Benavides*
617 F. App'x 790 (9th Cir. 2015) ...................................................................... 24

*United States v. Boone*
959 F.2d 1550 (11th Cir. 1992) .......................................................................... 5

*United States v. Bundy*
2016 U.S. Dist. LEXIS 75812 (D. Or. 2016) ........................................................ 12

*United States v. Carrion-Caliz*
944 F. 2d 220 (5th Cir. 1991) ............................................................................. 6

*United States v. Corbett*
750 F.3d 245 (2d Cir. 2014) ............................................................................... 3

*United States v. Dominguez-Maroyoqui*
748 F.3d 918 (9th Cir. 2014) ......................................................................... 2, 21

**TABLE OF AUTHORITIES** (Cont'd)

**Page(s)**

**FEDERAL CASES** (Cont'd)

*United States v. Flores-Cordero*
723 F.3d 1085 (9th Cir. 2013) ................................................................. 2

*United States v. Higgs*
353 F.3d 281 (4th Cir. 2003) ................................................................... 4

*United States v. Hoog*
504 F.2d 45 (8th Cir. 1974) ..................................................................... 6

*United States v. Hughes*
716 F.2d 234 (4th Cir. 1983) ...............................................................4, 26

*United States v. Kaplansky*
42 F.3d 320 (6th Cir. 1994) (en banc) ................................................... 8, 9

*United States v. Kozminski*
487 U.S. 931 (1988) .................................................................................3

*United States v. Lattanaphom*
2016 U.S. Dist. LEXIS 12368 (E.D. Cal. 2016) ...................................... 12

*United States v. Lentz*
383 F.3d 191 (4th Cir.2004) .................................................................... 4

*United States v. Parnell*
818 F.3d 974 (9th Cir. 2016) ................................................................... 2

*United States v. Patino*
962 F.2d 263 (2d Cir. 1992) .................................................................... 3

*United States v. Pawlak*
822 F.3d 902 (6th Cir. 2016) ............................................................. 24, 25

*United States v. Piccolo*
441 F.3d 1084 (9th Cir. 2006) .......................................................... 10, 11

*United States v. Sheffield*
___ F.3d___, 2016 U.S. App. LEXIS 14826 (D.C. Cir. 2016) ...............24, 25

*United States v. Sherbondy*
865 F.2d 996 (9th Cir. 1988) ...................................................................9

**TABLE OF AUTHORITIES** (Cont'd)

Page(s)

**FEDERAL CASES (Cont'd)**

*United States v. Si Lu Tian*
339 F.3d 143 (2d Cir. 2003) ........................................................................ 3, 6, 7

*United States v. Soto-Rivera*
811 F.3d 53 (1st Cir. 2016) ...............................................................................24

*United States v. Stands*
105 F.3d 1565 (8th Cir. 1997) ...........................................................................5, 7

*United States v. Taylor*
803 F.3d 931 (8th Cir. 2015) ..............................................................................24

*United States v. Taylor*
814 F.3d 340 (6th Cir. 2016) .....................................................................11, 14, 16, 19

*United States v. Torres*
__ F.3d__, 2016 U.S. App. LEXIS 12941 (9th Cir. 2016)........................................24

*United States v. Vivas-Ceja*
808 F.3d 719 (7th Cir. 2015) .....................................................................14, 16, 17, 20, 25

*United States v. Wiora*
1999 U.S. App. LEXIS 4014 (9th Cir. 1999)...........................................................7

*United States v. Young*
512 F.2d 321 (4th Cir. 1975) .............................................................................2

*Welch v. United States*
136 S. Ct. 1257 (2016) .....................................................................1, 9, 15, 17, 23

*Yong v. INS*
208 F.3d 1116 (9th Cir. 2000) ...........................................................................12

**FEDERAL STATUTES & REGULATIONS**

United States Code
18 U.S.C. § 16................................................................................*passim*
18 U.S.C. § 924..............................................................................*passim*
18 U.S.C. § 1201.............................................................................*passim*
28 U.S.C. § 2255.............................................................................*passim*

United States Sentencing Guidelines
§ 4B1.2 ................................................................................... 24, 25

**TABLE OF AUTHORITIES** (Cont'd)

Page(s)

Ninth Circuit Jury Instructions
§ 8.71 ................................................................................................ 10

**STATE STATUTES**

California Penal Code
§ 207(a) ..........................................................................................7, 8

Ohio Rev. Code Ann.
§ 2905.01 ............................................................................................8

**MISCELLANEOUS**

Benjamin Reese, *Holding on to Clarity: Reconciling the*
*Federal Kidnapping Statute with the Trafficking Victims Protection Act,*
114 Mich. L. Rev. 275 (2015)......................................................................3

## I.      INTRODUCTION

*Johnson v. United States*, 135 S. Ct. 2551 (2015) ("*Johnson II*"), announced a new rule of substantive law that applies retroactively on collateral review.  *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016).  Under *Johnson II*, Bustos' conviction for brandishing a firearm during and in relation to a crime of violence is unconstitutional and cannot stand.  Specifically, Bustos' conviction for violating 18 U.S.C. § 1201(a)(1) does not qualify as a crime of violence under 18 U.S.C. § 924(c)(3)(A) because the federal kidnapping statute does not require the government to prove beyond a reasonable doubt that the defendant used, attempted to use, or threatened to use violent physical force.  And because § 1201(a)(1) does not qualify as a crime of violence under § 924(c)(3)(A), it does not qualify as a crime of violence for purposes of § 924(c).

The government's attempt to save § 924(c)'s residual clause rests on the untenable proposition that this Court does not have to apply the categorical approach in assessing whether Petitioner's conviction under § 1201(a)(1) qualifies as a crime of violence, as well as a fundamental misunderstanding of the reasoning upon which the *Johnson II* Court's holding rests, which renders the residual clause of the Armed Career Criminal Act ("ACCA") meaningfully indistinguishable from the residual clause of § 924(c)(3)(B).  Because the categorical approach looks at elements, not real-world facts, the residual clause of § 924(c) suffers from the same constitutional infirmities as the residual clause struck down by the Supreme Court in *Johnson II* – they both require the application of an abstract risk-based standard to a hypothetical ordinary case that cannot possibly comport with the Constitution's guarantee of due process.

## II.     ARGUMENT

### A.      Kidnapping as Defined by 18 U.S.C. § 1201(a)(1) Does Not Qualify as a Crime of Violence under 18 U.S.C. § 924(c)(3)(A).

A statute can only qualify as a crime of violence under 18 U.S.C. § 924(c)(3) if the proscribed conduct "necessarily" includes "as an element the use, attempted use, or threatened use of physical force against the person or property of another." § 924(c)(3)(A).  Notably, when the issue is whether an offense qualifies as a crime of violence, the Supreme Court has clarified that "physical force" does not mean any physical force, it means *violent* force—that is, force

capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) ("*Johnson I*") (emphasis in original).

The case of *United States v. Parnell,* 818 F.3d 974 (9th Cir. 2016) is instructive. In *Parnell*, the Ninth Circuit recently held that armed robbery in Massachusetts was not a crime of violence where a conviction could be sustained based on a simple purse snatching. *Id.* at 979-80. The *Parnell* court analogized to *United States v. Dominguez-Maroyoqui*, 748 F.3d 918, 921 (9th Cir. 2014) ("the crime of assaulting a federal officer was not a crime of violence under *Johnson* because it reached conduct such as chasing a prosecutor down the street and bumping into him, walking up to a prosecutor and jolting her arm and shoulder, grabbing a wildlife agent's jacket or spitting in a mail carrier's face") and *United States v. Flores-Cordero*, 723 F.3d 1085, 1087-88 (9th Cir. 2013) ("Arizona's crime of resisting arrest was not a crime of violence under *Johnson* because it reached conduct such as a 'minor scuffle' in which a defendant kicked at officers who were attempting to place her in handcuffs"), and concluded that "[i]f the level of force in *Dominguez-Maroyoqui* and *Flores-Cordero* was not capable of causing physical pain or injury, then neither is the snatching of a purse from a victim's hand." *Id.*

Significantly, unlike robbery or resisting arrest, kidnapping *as defined under federal law* does not require the government to prove that the defendant used *any* physical force at all in order to secure a conviction. By definition, therefore, kidnapping as proscribed under 18 U.S.C. § 1201(a)(1) cannot qualify as a crime of violence under § 924(c)(3). As the Fourth Circuit has explained, kidnapping as defined under federal law is much broader than the crime of kidnapping has historically been defined. *United States v. Young*, 512 F.2d 321, 323 (4th Cir. 1975). The Court acknowledged that "at common law 'kidnap' meant to take and carry a person by force and against his will," but cautioned that simply because the title of the federal statute referred to "kidnapping," does not mean that kidnapping as proscribed under federal law was limited to the traditional definition of "kidnapping." *Id.* Instead the Court observed that "it is clear that Congress has made unlawful much more than strict kidnapping as defined at common law." *Id.*

Indeed, the federal crime of "kidnapping," "by its own terms contemplates that the kidnaped victim shall have been (1) 'unlawfully seized, confined, inveigled, decoyed, kidnaped,

abducted, or carried away by any means whatsoever' and (2) 'held for ransom or reward or otherwise.'" *Chatwin v. United States*, 326 U.S. 455, 459 (1946).  The Supreme Court went on to explain that the "act of holding a kidnaped person for a proscribed purpose necessarily implies an unlawful physical *or mental restraint* for an appreciable period against the person's will." *Id*. at 460.  In other words an individual can be guilty of kidnapping under federal law where he detains a person against his will by deception (inveigling or decoying), and he does not use any physical force, let alone violent physical force.  *See, e.g.*, *United States v. Kozminski*, 487 U.S. 931, 956 (1988) (Brennan, J., concurring) (observing that in the context of the "federal crime of kidnapping," the Court has recognized that "nonphysical coercion can induce involuntary action").  The federal kidnapping statute, therefore, sweeps very broadly; it is not concerned with the manner in which the detention of an individual is affected, rather it is "the involuntariness of seizure and detention which is the very essence of the crime of kidnaping." *Chatwin*, 326 U.S. at 464.

   Counsel is not aware of any circuit court holding that a conviction under § 1201(a)(1) requires proof beyond a reasonable doubt that the defendant used, attempted to use or threatened to use violent physical force.  Revealingly, the issue that is dividing the federal courts is not whether the defendant is required to use or threaten to use force, but whether the government has to prove that the defendant *would have been prepared* to use or threaten force to hold a victim if the circumstances had been different and the use or threatened use of force had been necessary to continue holding the victim against his/her will.  *See, e.g.*, *United States v. Corbett*, 750 F.3d 245, 251 (2d Cir. 2014) (discussing the circuit split)[1]; Benjamin Reese, *Holding on to Clarity:*

---

[1] In light of *Corbett*, a 2014 Second Circuit case, the government's citation to *United States v. Patino*, 962 F.2d 263 (2d Cir. 1992) for the proposition that it "cannot be questioned" that the crime of kidnapping involves the use of physical force against a person, falls flat.  Not only can that proposition be questioned, by 2014 the Second Circuit recognized that § 1201(a) "plainly reaches" a defendant who affects a seizure by "deceit."  *Corbett*, 750 F.3d at 251.  The issue the *Corbett* court contemplated, but did not resolve, was whether the government had to prove that the defendant would have resorted to force if circumstances had been different and force would have been necessary to hold the victim.  *Id*.; *c.f.*, *United States v. Si Lu Tian*, 339 F.3d 143, 152 (2d Cir. 2003) (observing that in the context of the Hostage Taking Act, with the same detention requirement as § 1201(a), a conviction will be sustained where the defendant merely used deception "to cause the hostage to remain under the defendant's control").

1   *Reconciling the Federal Kidnapping Statute with the Trafficking Victims Protection Act*, 114

2   Mich. L. Rev. 275, 289-92 (2015) (same).

3          For example in *United States v. Lentz*, 383 F.3d 191 (4th Cir. 2004), a case cited by the

4   government in its Response at pages 4-5, the Court acknowledged that it was unknown whether

5   the defendant had in fact used force to detain the victim in his home before ultimately killing her,

6   but whether he did in fact use force to hold her in his home was not something the jury was

7   required to find.  *Id*. at 202-03.  The defendant and the victim shared a child, and the defendant

8   had "inveigled" the victim to his house under the ruse that she was to pick up their child.  *Id*. at

9   200.  The defendant argued that the government had failed to establish that he had used force to

10  hold her in his house prior to murdering her.  *Id*. at 201.  Citing *Chatwin* for the proposition that

11  federal kidnapping requires proof of the use of *either* unlawful physical force *or "mental*

12  *restraint,"* the Court held that it did not matter whether the defendant had in fact used force to

13  hold his victim as "the jury could reasonably conclude from circumstantial evidence that after

14  her arrival at the house Lentz *either* physically forced *or lured* her inside or otherwise confined

15  her against her will."  *Id*. at 203 (emphasis added).  Similarly, in *United States v. Hughes*, 716

16  F.2d 234 (4th Cir. 1983), notwithstanding that the purpose of the kidnapping was to savagely

17  beat the victim, there was no evidence that the defendant had used, attempted to use or

18  threatened to use violent physical force to seize and hold his victim.  Instead, the defendant

19  pretended like he knew the victim's friend and misled the victim into thinking that he would

20  drive her to her friend's house.  *Id*. at 237.  The Court held that the conviction for kidnapping

21  under federal law could be sustained because "[b]y inducing his victim by misrepresentations to

22  enter his vehicle and to accompany him, and knowing that the victim's belief as to their purpose

23  and destination is different from his actual illicit purpose, the kidnapper has interfered with, and

24  exercised control over, her actions.  We find this conduct sufficient to satisfy the 'involuntariness

25  of seizure and detention' requirement of *Chatwin*."  *Id*. at 239.

26          Indeed, the government's citation to another Fourth Circuit case, *United States v. Higgs*,

27  353 F.3d 281 (4th Cir. 2003), at page 5 of its opposition, makes Petitioner's point for him.

28  Where the victims had voluntarily gotten into the defendant's truck and remained on the truck

under the mistaken belief that the defendant was taking them home, the court sustained the defendant's conviction even though he had not used or threatened force to affect the kidnapping. *Id*. at 313.  The court opined that the defendant "at least was prepared to confine them at gunpoint if necessary," thereby indicating that in order to sustain a conviction under § 1201(a), the government did not have to prove as an element of the offense that the defendant necessarily used or threatened to use violent physical force to affect the kidnapping.  *Id*.

In another case cited by the government in its response at page 5, *United States v. Boone*, 959 F.2d 1550 (11th Cir. 1992), the Eleventh Circuit's reasoning is similar to that of the Fourth Circuit discussed above.  In *Boone*, the defendant deceived the victim into thinking that he was taking the victim to a marijuana patch.  *Id*. at 1552-53.  The victim willingly went with and stayed with the defendant based on his understanding that the defendant was taking him to said marijuana patch.  *Id*.  While the defendant lured the victim into the woods to kill him, at no time during the kidnapping did the defendant use, attempt to use or threaten to use violent physical force.  *Id*.  The Court held that "the mere fact that the kidnapper was not required to physically hold his victim prior to the crossing of state lines, thereby sparing himself the effort of using forcible action to accomplish the kidnapping, does not take his conduct outside of the statute." *Id*. at 1556.  The Court explained that "[w]here an inveiglement occurs and force is held in reserve only because the kidnapper's deception is operating successfully, an unlawful interference with the actions of another has occurred."  *Id*.  In other words, where a seizure and holding are affected merely as a result of the defendant deceiving the victim, and without the use, attempted use or threatened use of physical force, a conviction under § 1201(a)(1) will be sustained.

Similarly, the Eighth Circuit has held that a conviction for violating § 1201(a)(1) will be sustained where the defendant did not use or threatened to use force.  For example, in *United States v. Stands*, 105 F.3d 1565 (8th Cir. 1997), while the victim got into the defendant's car and remained in the car, he did so only under false pretenses, and if he had known the truth "he might otherwise have wished to go his own way."  *Id*. at 1576.  Specifically, the defendant had lured the victim into the car and convinced him to remain in the car by deceiving the victim into

believing they were going to look at some family land.  The Court held that even though the victim went with and stayed with the defendant voluntarily, that "is not dispositive because he did not consent to the kind of trip eventually undertaken." *Id*. (internal quotations omitted). Similarly, in *United States v. Hoog*, 504 F.2d 45 (8th Cir. 1974), the defendants did not use physical force to seize or hold his victims; instead they "induced each of [the victims] to accept a ride by false representations.  Once they had accepted a ride, [the defendants] lured or enticed each of them -- again by false promises -- to stay in the vehicle during its roundabout course into Kansas." *Id*. at 50-51.  The Court characterized as "frivolous" the defendant's argument that his conviction for kidnapping in violation of § 1201(a) could not be sustained given that the victims went with him and stayed with him voluntarily.  *Id*. at 50.

Cases involving the Hostage Taking Act, such as *United States v. Carrion-Caliz*, 944 F. 2d 220 (5th Cir. 1991) and *United States v. Si Lu Tian*, 339 F.3d 143 (2d Cir. 2003), are instructive.  Like federal kidnapping, the Hostage Taking Act requires proof that the defendant unlawfully seized and held an individual, and courts rely on *Chatwin* for the proposition that a "holding" can be accomplished through either physical or mental restraint.  *See, e.g*., *Carrion-Caliz*, 944 F.2d at 225; *Si Lu Tian*, 339 F.3d at 150-53.  Relying on *Chatwin*, the Fifth Circuit explained that "to seize or detain a hostage, a hostage taker need not use, or even threatened to use, physical force or violence." *Carrion-Caliz*, 944 F.2d at 225.  The victim in *Carrion-Caliz* testified that she stayed in the defendant's home because the defendant "had warned her that if they left the house, she and her granddaughters would be apprehended by immigration officials and deported." *Id*. at 226.  Sustaining the conviction, the Fifth Circuit held that "the jury was entitled to conclude that [the defendant] did not need to use any physical force to restrain [the victims]; he was able to frighten and deceive them sufficiently to cause them to remain in his home." *Id*. at 227.  Similarly, the Second Circuit has explained that "[t]o prove that an individual has been held against her will, the government need not show that the defendant actually used physical force or violence to restrain that person. . . .  In finding the detention element of a hostage-taking violation met, a jury is entitled to rely on evidence showing that the defendant . . . deceived . . . .  his hostage so as to cause the hostage to remain under the

defendant's control." *Si Lu Tian*, 339 F.3d at 152.

In an unpublished decision, *United States v. Wiora*, 1999 U.S. App. LEXIS 4014 (9th Cir. 1999) (unpub), the Ninth Circuit reviewed the sentence of a defendant who had pled guilty to violating § 1201. *Id*. at 2. In *Wiora*, when the victim threatened to leave, the defendant told her that she would have to leave their child behind and that she would be arrested if she left. *Id.* at 3. Additionally the defendant warned the victim that if she went to the police he would go to jail where he would commit suicide. *Id*. In other words, the "record makes clear that Wiora did not physically detain his victim; any restraint practiced on the victim came in the form of mental coercion." *Id*. at 13 (Reinhardt, J., concurring). Consistent with the Second, Fourth, Fifth, Eighth and Eleventh Circuit cases discussed above, the Ninth Circuit seemed entirely untroubled by the fact that the defendant had not used, attempted to use or threatened to use physical force to seize and hold the victim.

Notably the government fails to cite any case that stands for the proposition that in order to secure a conviction under 18 U.S.C. § 1201(a)(1), the government must prove as an element of the offense that the defendant used, attempted to use or threatened to use violent physical force against the person or property of another. The government's citation to *Delgado-Hernandez v. Holder*, 697 F.3d 1125 (9th Cir. 2012) does not advance its argument. *Delgado-Hernandez* involved California's, not the federal government's, kidnapping statute. *Id*. at 1126. California Penal Code § 207(a) is narrower than 18 U.S.C. § 1201(a)(1). Under California law, to be guilty of kidnapping a defendant must "forcibly, or by any other means of instilling fear" steal or take, or hold, detain or arrest a person. Cal. Penal Code § 207(a). Noticeably absent is the federal language permitting a conviction where the defendant simply inveigles or decoys his victim.

Significantly, however, even under the narrower language of § 207(a), which requires the government to prove that the defendant used force or fear to affect the kidnapping, the Ninth Circuit held that "§ 207(a) does not include a force element under § 16(a)." *Id*. at 1127. The definition of the force element under 18 U.S.C. § 16(a) is identical to the elements clause codified at 18 U.S.C. § 924(c)(3)(A). In other words, if § 207(a), which, unlike the federal kidnapping statue requires proof of force or fear, does not qualify as a crime of violence under

§16(a), it does not qualify under § 924(c)(3)(A) , and if § 207(a) does not qualify as a crime of violence under § 924(c)(3)(A), then neither does § 1201(a) where a conviction will be sustained where a defendant uses neither force nor fear, but merely deception to affect the kidnapping. Indeed, the *Delgado-Hernandez* court acknowledged as much, observing that the "federal kidnapping statute has no force requirement." *Id*. at 1130.

Notably, the only basis upon which the Ninth Circuit concluded that § 207(a) could qualify as a crime of violence was under the residual clause of § 16(b), *id*. at 1127, -- the very same residual clause that the Ninth Circuit struck down following *Johnson II*. *Dimaya v. Lynch*, 803 F.3d 1110, 1111, 1120 (9th Cir. 2015), cert. granted sub nom. *Lynch v. Dimaya*, 2016 U.S. LEXIS 4461 (Sept. 29, 2016). Significantly, in a recent district court case in the Central District, the government did not attempt to argue that kidnapping in violation of § 207(a) qualifies as a crime of violence after *Johnson II*. *Espinoza v. United States*, 2:16-cv-04014 (C.D. Cal.), Government's Opposition, Dkt. Entry 18. The district court granted Espinoza's § 2255 motion arguing that § 207 was not a crime of violence under U.S.S.G. § 2K2.1 after *Johnson II*. *Id*., Dkt. Entry 22.

The government also relies on the Sixth Circuit case, *United States v. Kaplansky*, 42 F.3d 320 (6th Cir. 1994) (en banc), but just like *Delgado-Hernandez*, *Kaplansky* is another residual clause case.[2] Indeed, the government in *Kaplansky* did not even argue that a kidnapping statute that permitted a conviction merely on the basis of deception had "as a necessary element the use, attempted use or threatened use of force." *Id*. at 323. The Court explained that "[j]ust because actual force or injury may not surface in a particular instance of kidnapping (*i.e.*, in those instances initiated by deception) does not mean that it is not an undercurrent of the offense having the serious *potential* of rising to the surface." *Id*. at 324 (emphasis in original). The Court then went on to hold that the state kidnapping statute at issue was a crime of violence under the very residual clause that *Johnson II* struck down as unconstitutionally vague. *Id*.

---

[2] Just like *Delgado-Hernandez*, *Kaplansky* concerned a state statute, not 18 U.S.C. § 1201(a)(1), but at least the statute at issue in *Kaplansky*, Ohio Rev. Code Ann. § 2905.01, proscribed kidnapping that was affected by "deception," in addition to by force or threat. *Kaplansky*, 42 F.3d at 321.

Notably, the *Kaplansky* Court cited to the Ninth Circuit to bolster its holding, observing that where a kidnapping statute permits conviction on the basis that the defendant used deception to affect the kidnapping, "'[v]iolence  is not an element of kidnapping defined this way,'" and thus said statute would not qualify as a crime of violence under the elements prong, but because "'kidnapping entails a serious potential risk of physical injury to the victim,'" kidnapping qualifies as a crime of violence under the residual clause of the Armed Career Criminal Act. *Id.* (citing *United States v. Sherbondy*, 865 F.2d 996, 1009 (9th Cir. 1988)).

The bottom line is that, notwithstanding the government's suggestions to the contrary, the issue before this Court is not a theoretical discussion about the essence of kidnapping, the common law history of how states have historically viewed kidnapping, the latent possibility that violence might be used, or that victims might be kidnapped for the purpose of doing them harm – the only question before this Court is whether 18 U.S.C. § 1201(a)(1) necessarily has as an element the use, attempted use, or threatened use of violent physical force against the person or property of another.  As discussed above, a review of the case law across the circuits clearly indicates that a conviction under § 1201(a)(1) will be upheld where the defendant seizes and holds his victim on the basis of deception alone; the government is not required to prove beyond a reasonable doubt that the defendant used, attempted to use or threatened to use violent physical force to affect the kidnapping.  A conviction under § 1201(a)(1) cannot, therefore, qualify as a crime of violence under § 924(c)(3)(A).

**B.     Following the Reasoning of *Johnson II*, as Affirmed by *Welch v. United States*, 136 S. Ct. 1257 (2016), and Given Binding Ninth Circuit Precedent, the Residual Clause Codified at 18 U.S.C. § 924(c)(3)(B) Is Unconstitutionally Vague.**

The government's argument that § 924(c)(3)(B) survives *Johnson II* rests on (1) the untenable proposition that this Court does not have to apply the categorical approach in assessing whether Petitioner's conviction under § 1201(a)(1) qualifies as a crime of violence, and (2) a fundamental misunderstanding of the reasoning upon which the *Johnson II* Court's holding rests, which renders the residual clause of the ACCA meaningfully indistinguishable from the residual clause of § 924(c)(3)(B).

1
2

**1.   This Court Must Use the Categorical Approach to Assess Whether Bustos' Conviction Qualifies as a Crime of Violence Under § 924(c).**

3
4
5
6
7
8
9
10
11
12
13
14
15

The government's suggestion that this Court need not apply the categorical approach to determine whether Petitioner's prior conviction qualifies as a crime of violence under the residual clause of § 924(c)(3)(B) is foreclosed by binding Ninth Circuit precedent -- "in the context of crime-of-violence determinations under § 924(c), our categorical approach applies regardless of whether we review a current or prior crime." *United States v. Piccolo*, 441 F.3d 1084, 1086-87 (9th Cir. 2006) (as amended April 20, 2006).  As the *Piccolo* court explained, in *United States v. Amparo*, 68 F.3d 1222 (9th Cir. 1995), the Ninth Circuit "considered the possibility of using a case-by-case approach when reviewing the instant crime of conviction but declined to do so in light of our general commitment to deciding rules of law on categorical grounds." *Id.* at 1087.  Indeed, as recently as last month the Ninth Circuit again affirmed that whether a "conviction under § 924(c) for use of a firearm" qualifies as a "crime of violence," requires a court to "apply the 'categorical approach' laid out in *Taylor v. United States*." *United States v. Benally*, ___F.3d___, 2016 U.S. App. LEXIS 13885, 3-4 (9th Cir. 2016).[3]

16
17
18
19
20
21
22
23
24
25

In other words, there is no ambiguity that "this circuit has adopted a categorical approach to determining which offenses are included under section 924(c) as 'crimes of violence,' obviating the need for fact finding by the jury." *Amparo*, 68 F.3d at 1224.  While the jury determines the facts underlying the charged offense, whether an offense of conviction is a crime of violence is a question of law determined by the court.  *Id.*  Notably the Ninth Circuit's Model Jury Instructions for 18 U.S.C. § 924(c) are unambiguous.  The first prong of the Model Instructions reads:  "First, the defendant committed the crime of [specify crime] as charged in . . . the indictment*, which I instruct you is a [crime of violence]* . . . ."  Ninth Circuit Model Jury Instructions § 8.71 (emphasis added).  Not only does the jury have no input into whether an

26
27
28

---

[3] The issue of whether § 924(c)(3)(B) was unconstitutionally vague was not before the Court in *United States v. Benally*.  The issue before the Court was whether an offense with a "gross negligence" *mens rea* could ever qualify as a crime of violence under any definition of "crime of violence;" the Court held that it could not, and thus whether § 924(c)(3)(B) was unconstitutionally vague was of no moment.  *Benally*, 2016 U.S. App. LEXIS 13885, at  3-4.

1  offense is a crime of violence, in determining whether an offense qualifies as a crime of violence

2  "application of a categorical approach to section 924(c)(3)(B) is required by our cases," which

3  "is in contrast to the circumstantial or case-by-case method that requires the district court to

4  inquire into the facts of a particular case." *Amparo*, 68 F.3d at 1225 (internal quotations

5  omitted).

6      Given the clear direction by the Supreme Court in *Leocal v. Ashcroft*, 543 U.S. 1 (2004),

7  it is hardly surprising that the Ninth Circuit mandates the use of the categorical approach when

8  determining  whether an offense qualifies as a crime of violence under § 924(c)(3)(B).  As

9  *Leocal* explained, "the statute directs our focus to the "offense" of conviction . . . .  This

10 language requires us to look to the elements and the nature of the offense of conviction, rather

11 than to the particular facts relating to the petitioner's crime."  *Id*. at 7 (discussing the identical

12 language of 18 U.S.C. § 16(b)).  Notably, the language of § 16(b) is identical to the language of

13 § 924(c)(3)(B) – both statutes require the court to determine whether "***an offense . . . by its***

14 ***nature*** involves a substantial risk that physical force against the person or property of another

15 may be used in the course of committing the offense."  § 16(b); § 924(c)(3)(B) (emphasis added).

16     Indeed, the only distinction that a court has attempted to draw between § 16(b) and

17 § 924(c)(3)(B) is one that is inapplicable in the Ninth Circuit.  Attempting to reconcile its

18 decision to strike down § 16(b) as unconstitutionally vague after *Johnson II* with its earlier

19 holding in *United States v. Taylor*, 814 F.3d 340 (6th Cir. 2016) that § 924(c)(3)(B) survived

20 *Johnson II*, in dicta the Sixth Circuit observed that "[u]nlike the ACCA and INA, which requires

21 a categorical approach to stale predicate convictions, 18 U.S.C. § 924(c) is a criminal offense

22 that requires ultimate determination of guilt beyond a reasonable doubt – by a jury, in the same

23 proceeding.  This makes all the difference."  *Shuti v. Lynch*, 828 F.3d 440, 2016 U.S. App.

24 LEXIS 12500, 21 (6th Cir. 2016).  While it may be the case that juries in the Sixth Circuit decide

25 whether an offense by its nature constitutes a crime of violence under the residual clause of

26 § 924(c), that is unequivocally not the case in the Ninth Circuit.  *Piccolo*, 441 F.3d at 1086-87;

27 *Amparo*, 68 F.3d at 1224-26.  Accordingly, in the Ninth Circuit there is no basis for

28 distinguishing between the legal analysis applicable to the residual clause codified at 18 U.S.C.

§ 16(b) and the identical residual clause codified at 18 U.S.C. § 924(c)(3)(B).

The Ninth Circuit's decision in *Dimaya v. Lynch* striking down the residual clause of § 16(b) is therefore binding on this Court with respect to the residual clause of § 924(c)(3)(B). [4] *See, e.g.*, *United States v. Bundy*, 2016 U.S. Dist. LEXIS 75812 (D. Or. 2016) ("Unlike the Sixth Circuit in *Taylor*, this Court is not empowered to decline to follow *Dimaya*. As the *Taylor* court noted, '§ 16(b) appears identical to § 924(c)(3)(B) in all material respects' . . . . Accordingly, because the Court is bound by *Dimaya*, the Court must conclude that § 924(c)(3)(B) is void for vagueness."); *United States v. Lattanaphom*, 2016 U.S. Dist. LEXIS 12368, 10 (E.D. Cal. 2016) ("Existing authority in the Ninth Circuit compels this court to extend *Johnson* to the residual clause of 18 U.S.C. § 924(c)."); *see also*, *Berry v. United States*, ___ F.3d ___, 2016 U.S. App. LEXIS 12176, 12-13 (9th Cir. 2016) (granting petitioner's request to file a second or successive § 2255 motion contending that § 924(c)(3)(B) is unconstitutional after *Johnson II*, the Ninth Circuit cited the *Lattanaphom* court's observation that *Dimaya* compels the conclusion that the residual clause of § 924(c) does not survive *Johnson II*).

As the *Dimaya* court explained, the provision codified at § 16(b), which as discussed above is identical to the provision codified at § 924(c)(3)(B), and "ACCA's residual clause are subject to the same mode of analysis. Both are subject to the categorical approach, which demands that courts 'look to the elements and the nature of the offense of conviction, rather than

---

[4] Notwithstanding the Supreme Court's decision to grant cert, *Dimaya* continues to be binding on this Court. The Ninth Circuit issued the mandate in *Dimaya* on February 3, 2016. *United States v. Dimaya*, #11-71307 (9th Cir. 2016). When a federal circuit court has issued a mandate in a case, "the district courts within that circuit are bound to follow [the case] and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority." *Yong v. INS*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000)*; see, e.g.*, *Hart v. Massanari*, 266 F.3d 1155, 1170-71 (9th Cir. 2001) ("A district judge may not respectfully (or disrespectfully) disagree with his learned colleagues on his own court of appeals who have ruled on a controlling legal issue. . . . Binding authority must be followed unless and until overruled by a body competent to do so. . . . [And] [o]nce a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court."); *Schwab v. Sec'y, Dep't of Corr.*, 507 F.3d 1297, 1298-99 (11th Cir. 2007) (observing that the "grant of certiorari on an issue does not suggest a view on the merits" and such grants "do not themselves change the law" of the circuit); *Bowden v. Kemp*, 774 F.2d 1494, 1495 (11th Cir. 1985) (holding that a grant of certiorari by Supreme Court does not constitute contrary authority, and that circuit precedent remains binding).

to the particular facts relating to petitioner's crime.'" *Dimaya*, 803 F.3d at 1114-15 (citing *Leocal*, 543 U.S. at 7).  The categorical approach requires a court to engage in a two-step analysis.  First the court "must decide what the usual or ordinary violation of the statute" looks like, and then the court must assess whether there is a substantial risk that physical force will be used against the person or property of another during whatever it has imagined constitutes the "ordinary" commission of the offense. *Dimaya*, 803 F.3d at 1115-16; *see Shuti v. Lynch*, 2016 U.S. App. LEXIS 12500, at 13-14 ("Both residual clauses [ACCA and § 16(b)] require a categorical approach to prior convictions. . . .  And the two residual provisions deploy the ordinary case method in precisely the same fashion.").  Indeed, as the Tenth Circuit explained just a few weeks ago:

> Similar to the ACCA's residual clause, § 16(b), through its use of the phrase 'by its nature,' 'directs our focus to the 'offense' of conviction' and thus 'requires us to look to the elements and nature of the offense of conviction, rather than to the particular facts relating to the [defendant's] crime.' *Leocal v. Ashcroft*, 543 U.S. 1, 7, 125 S. Ct. 377, 160 L. Ed. 2d 271 (2004). In other words, similar to the ACCA's residual clause, § 16(b) 'requires courts to use a [two-step] framework known as the categorical approach when deciding whether' a prior conviction constitutes a crime of violence. *See Johnson*, 135 S. Ct. at 2557.  Under the first step of this framework, a reviewing court must 'picture the kind of conduct that the crime involves in 'the ordinary case." *Id.*  Under the second step, a reviewing court must 'judge whether that abstraction,' *i.e.*, the 'ordinary case,' falls within the standard outlined by the statute.  *Id.*

*Golicov v. Lynch*, ___ F.3d ___, 2016 U.S. App. LEXIS 17121, 15-16 (10th Cir. Sept. 19, 2016).  Similarly, the Seventh Circuit has described the two-step analysis mandated by the categorical approach that courts must employ with respect to the residual clause codified at § 16(b), which is identical to the residual clause at § 924(c)(3)(B), as follows:

> Regarding the first step of the categorical approach, § 16(b) substitutes the phrase 'by its nature' for the residual clause's 'otherwise involves conduct.'  That these two phrases are synonymous was confirmed by the Supreme Court in *Leocal v. Ashcroft*, 543 U.S. 1, 125 S. Ct. 377, 160 L. Ed. 2d 271 (2004), decided more than a decade before *Johnson*.  There the Court stated that § 16(b) directs courts to consider whether an offense would 'naturally involve a person acting in disregard of the risk that physical force might be used against another.'  *Id.* at 10. This requires an evaluation of 'the elements and the nature of the offense of

> conviction,' not 'the particular facts relating to [a defendant's] crime.'
> *Id.* at 7.  *Leocal*'s interpretation of § 16(b) is indistinguishable from
> *Johnson*'s interpretation of the residual clause.

*United States v. Vivas-Ceja*, 808 F.3d 719, 722 (7th Cir. 2015); *see, e.g.*, *United States v. Taylor*, 814 F.3d at 394 (White, J., concurring and dissenting in part) ("Section 924(c)(3)(B) . . . requires courts to use a categorical approach, 'looking to the language of the statute, rather than the particular facts of a case . . . thereby tying 'the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime'") (citing *Johnson*, 135 S. Ct. at 2557).

The government's argument, therefore, that this Court can simply disregard the Supreme Court's guidance, not to mention binding Ninth Circuit precedent, and abandon the categorical approach when analyzing § 924(c)(3)(B), is untenable.  The categorical approach applies, and it requires a court to imagine how a given statute is ordinarily committed, and then, based on that hypothetical, determine whether the commission of the offense by its nature involves a substantial risk that physical force will be used – it is this very layering of abstraction on top of abstraction that forms the basis of the Supreme Court's decision to strike down the ACCA's residual clause as unconstitutionally vague, and it is why the government wants this court to abandon the requisite categorical approach, which it cannot do.

> ### 2.  Under the Reasoning of *Johnson II*, the Residual Clause Codified at 18 U.S.C. § 924(c)(3)(B) is Unconstitutionally Vague.

As the Ninth Circuit explained in *Dimaya*, when it struck down as unconstitutionally vague the identically worded residual clause of § 16(b):

> In *Johnson*, the Supreme Court recognized two features of ACCA's
> residual clause that 'conspire[d] to make it unconstitutionally vague.'
> 135 S. Ct. at 2557.  First, the Court explained, the clause left 'grave
> uncertainty' about 'deciding what kind of conduct the 'ordinary case' of
> a crime involves.'  *Id.*  That is, the provision 'denie[d] fair notice to
> defendants and invite[d] arbitrary enforcement by judges' because it
> 'tie[d] the judicial assessment of risk to a judicially imagined 'ordinary
> case' of a crime, not to real-world facts or statutory elements.'  *Id.*
> Second, the Court stated, ACCA's residual clause left 'uncertainty
> about how much risk it takes for a crime to qualify as a violent felony.'
> *Id.* at 2558.  By combining these two indeterminate inquiries, the Court
> held, 'the residual clause produces more unpredictability and

1

2

3

4

5

6

7

arbitrariness than the Due Process Clause tolerates.' *Id*. On that ground it held the residual clause void for vagueness.  The Court's reasoning applies with equal force to the similar statutory language and identical mode of analysis used to define a crime of violence for purposes of the INA. The result is that because of the same combination of indeterminate inquiries, § 16(b) is subject to identical unpredictability and arbitrariness as ACCA's residual clause.  In sum, a careful analysis of the two sections, the one at issue here and the one at issue in *Johnson*, shows that they are subject to the same constitutional defects and that *Johnson* dictates that § 16(b) be held void for vagueness.

8   *Dimaya*, 803 F.3d at 1115.  As with the residual clause in the ACCA, the residual clause codified

9   at § 924(c)(3)(B) "offers 'no reliable way to choose between . . . competing accounts' of what a

10  crime looks like in the ordinary case."  *Id*. at 1116 (quoting *Johnson*, 135 S. Ct. at 2558).

11  Moreover, the language of § 924(c)'s residual clause "gives judges no more guidance than does

12  the ACCA provision as to what constitutes a substantial enough risk of force to satisfy the

13  statute."  *Id*. at 1117.  Specifically, the language of § 924(c)'s residual clause "combines

14  'indeterminacy about how to measure the risk posed by a crime with indeterminacy about how

15  much risk it takes for the crime to qualify as' a crime of violence."  *Id*. (quoting *Johnson*, 135 S.

16  Ct. at 2558).

17      In other words, just like the residual clause in the ACCA, the language of § 924(c)(3)(B)

18  "requires courts to 1) measure the risk by an indeterminate standard of a 'judicially imagined

19  ordinary case,' not by real world-facts or statutory elements and 2) determine by vague and

20  uncertain standards when a risk is sufficiently substantial."  *Id*. at 1120.  It was these two layers

21  of uncertainty that caused the Ninth Circuit to hold that the identical residual clause codified at

22  § 16(b) was unconstitutionally vague under *Johnson II*.  *See, e.g.*, *Golicov*, 2016 U.S. App.

23  LEXIS 17121, at 17 (Section 16(b), "by 'requir[ing] courts to assess the hypothetical risk posed

24  by an abstract generic version of the offense' at issue, *Welch*, 136 S. Ct. at 1262, 'produces more

25  unpredictability and arbitrariness than the Due Process Clause tolerates,' *Johnson*, 135 S. Ct. at

26  2558."); *Shuti*, 2016 U.S. App. LEXIS 12500, at 15 ("both provisions combine indeterminacy

27  about 'how to measure the risk posed by a crime' and 'how much risk it takes for the crime to

28  qualify' as a crime of violence or a violent felony.  *See Johnson*, 135 S. Ct. at 2557-58.  We

cannot avoid the conclusion that the INA's residual clause falls squarely within *Johnson*'s core holding"); *Vivas-Ceja*, 808 F.3d at 722-23 ("*Johnson* concluded that the indeterminacy of both parts of the residual clause's categorical approach—the 'ordinary case' inquiry and the 'risk' inquiry—rendered the clause unconstitutionally vague.  Because § 16(b) requires the identical indeterminate two-step approach, it too is unconstitutionally vague."); *c.f., Taylor*, 814 F.3d at 394 (White, J., concurring and dissenting) ("like the ACCA's residual clause § 924(c)(3)(B) requires courts to apply an imprecise 'substantial risk' standard to this 'judge-imagined abstraction'").

The government's attempts to distinguish the language of § 924(c)'s residual clause from § 924(e)'s residual clause struck down by *Johnson II*, are not only unavailing, they have been considered and rejected by the Ninth, Sixth, Seventh and Tenth Circuits in the context of reviewing the identically worded residual clause codified at § 16(b).

>      a.      **The Lack of Enumerated Offenses Renders § 924(c)'s Residual Clause More, Not Less Vague, than the ACCA's Residual Clause**.

As the Ninth Circuit has explained, the fact that § 924(e)(2)(B)(ii) contained enumerated offenses in addition to the residual clause was not the basis of the Supreme Court's holding that the ACCA's residual clause was unconstitutionally vague.  *Dimaya*, 803 F.3d at 1117-18. Instead, "the fundamental reason for the Court's holding was the residual clause's 'application of the 'serious potential risk' standard to an idealized ordinary case of the crime . . . . *Johnson* therefore made plain that the residual clause was void for vagueness in and of itself for the reasons stated in reaching its decision, and not because of the clause's relation to the four listed offenses." *Id*.  Indeed, the Ninth Circuit went even further, and observed that "if anything § 16(b) is more vague than the residual clause because of its lack of enumerated examples. . . [as] they provide[d] at least some guidance as to the sort of offenses Congress intended for the provision to cover.  Section 16(b), by contrast, provide[s] no such guidance at all." *Id*. at 1118 n.13; *see, e.g*., *Shuti*, 2016 U.S. App. LEXIS 12500, at 17-18 ("the existence of a prefatory 'list of examples,' though surely confusing, was not determinative of the Court's vagueness analysis.  . . .  At any rate, the INA's lack of an enumerated-crimes clause actually makes its

1   residual clause a broader provision, as it covers every offense that involved a substantial risk of

2   the use of 'physical force against the person or property of another.'") (internal quotations and

3   citations omitted); *Vivas-Ceja*, 808 F.3d at 722 (accusing the government of "overread[ing] this

4   part of the Court's analysis, the Court explained that "the enumeration of specific crimes did

5   nothing to clarify the quality or quantity of risk necessary to classify offenses under the statute.

6   The list itself wasn't one of the 'two features' that combined to make the clause

7   unconstitutionally vague.").

8       Notably, in the last few weeks, the Tenth Circuit has joined the Ninth, Sixth and Seventh

9   Circuits, concluding that § 924(e)'s list of enumerated offenses "does not serve to meaningfully

10  distinguish § 16(b) from the ACCA's residual clause because the enumeration of specific crimes

11  in the ACCA's residual clause was not one of the '[t]wo features of the residual clause' – *i.e.,* the

12  determination of the ordinary case and the risk assessment of that ordinary case – that

13  'conspire[d],' in the Supreme Court's view 'to make it unconstitutionally vague.'" *Golicov*,

14  2016 U.S. App. LEXIS 17121, at 20 (quoting *Johnson*, 135 S. Ct. at 2557).  As the Tenth Circuit

15  explained, in *Welch v. United States*, 136 S. Ct. 1257 (2016), the Court made clear that its

16  reference to enumerated offenses in *Johnson II*'s "was not determinative of the Court's

17  vagueness analysis." *Id.* at 21.  The *Golicov*  court pointed to *Welch*'s summary of *Johnson II* --

18  "'The residual clause failed not because it adopted a 'serious potential risk' standard but because

19  applying that standard under the categorical approach required courts to assess the hypothetical

20  risk posed by an abstract generic version of the offense.' 136 S. Ct. at 1262", *id.*, -- and observed

21  that "[n]owhere in *Welch* did the Court mention the list of enumerated crimes in the ACCA's

22  residual clause, let alone indicate that the list was relevant to its holding in *Johnson*." *Id.*

23      In other words, *Johnson II* struck down the residual clause, not because of the

24  enumerated offenses, but because it  left (1) "grave uncertainty about how to estimate the risk

25  posed by a crime," and (2) "uncertainty about how much risk it takes for a crime to qualify as

26  violent felony," which results in a "wide-ranging inquiry [that] denies fair notice to defendants

27  and invites arbitrary enforcement by judges;" exactly the same problem that is presented by the

28  equally indefinite language of § 924(c)'s residual clause.  *Johnson*, 135 S. Ct. at 2557-58.

1

2

### b.    If § 924(c)(3)(B) is Narrower than § 924(e)(2)(B)(ii), It Is a Distinction Without a Difference.

3

4

        Just as it does here, in *Dimaya*, the government argued that assessing the risk that an

offense might create a serious potential for injury is a sufficiently broader exercise than

determining whether an offense by its nature runs a substantial risk that physical force will be

used in the commission of the offense, such that the former inquiry is unconstitutionally vague

while the later inquiry is sufficiently definite to satisfy the constitutional requirements of fair

notice and non-arbitrary enforcement.  The argument does not withstand scrutiny, and the Ninth

Circuit has rejected it.  *Dimaya*, 803 F.3d at 1118-19.  As the Ninth Circuit explained,

5

6

7

8

9

10

> First, we doubt that  this phrase actually creates a distinction between the
> two clauses. For example, we have consistently held that California's
> burglary statute . . . is a crime of violence for the purposes of the INA
> precisely because of the risk that violence will ensue *after* the defendant
> has committed the acts necessary to constitute the offense. . . . By the
> time the risk of physical force against an occupant arises. . . defendant
> has frequently already satisfied the elements of the offense of burglary
> under California law. . . .
>
> [Moreover], even if such a distinction did exist, it would not save the
> INA's definition of a crime of violence from unconstitutionality.  The
> Court, in *Johnson*, held ACCA's residual clause to be unconstitutionally
> vague because it combined the indeterminate inquiry of 'how to measure
> the risk posed by a crime' in the ordinary case with 'indeterminacy about
> how much risk it takes for the crime to qualify as a violent felony.' 135
> S. Ct. at 2558. This reasoning applies equally whether the inquiry
> considers the risk of violence posed by the commission and the after
> effects of a crime, or whether it is limited to consideration of the risk of
> violence posed by acts necessary to satisfy the elements of the offense.

11

12

13

14

15

16

17

18

19

20

21

22

*Id*. (emphasis added).

23

        The government made the same argument to the Sixth Circuit, which was equally

unimpressed:

24

25

26

27

28

> the government argues that the INA's residual clause provides a
> sufficiently definite standard because its text focuses on the risk that
> 'force' may be used in the ordinary case of 'committing the offense.'
> This distinction, the government claims, renders the risk analysis
> somehow less uncertain. . . . We are hard pressed to accept these textual
> distinctions.  Even though the INA refers to the risk that 'force may be
> used,' rather than the risk that potential 'injury might occur,' *Johnson* is

1
2
equally applicable.  The reason is simple: a marginally narrower
abstraction is an abstraction all the same.

3
*Shuti*, 2016 U.S. App. LEXIS 12500, at 18.

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
        The Tenth Circuit likewise has rejected the government's argument that the language
contained in § 924(c)'s residual clause is meaningfully narrower than ACCA's residual clause.
*Golicov*, 2016 U.S. App. LEXIS 17121, at 19-20.  The Court opined that even if it were to
"assume that the standard employed in § 16(b) is 'marginally narrower' than the standard
employed in the ACCA's residual clause. . . the fact remains that they are both abstractions all
the same  . . . neither phrase offers courts meaningful guidance to assess the risk posed by the
hypothetical offense."  *Id.* (internal quotations omitted).  Moreover, as the *Golicov* court noted,
"nearly all uses of physical force 'risk a possibility of future injury.'  Thus, virtually every
criminal act that satisfies the § 16(b) test could also satisfy the residual clause's test; any
distinction between the two statues on this ground is of indeterminate consequence to § 16(b)'s
unconstitutionality under *Johnson*."  *Id.  See, e.g., Taylor*, 814 F.3d at 396 (White, J., concurring
and dissenting) (comparing *Johnson II* with *Leocal* demonstrates that "the Supreme Court itself
has taken inconsistent positions on whether the risk of force or injury from burglary arises in the
course of committing the idealized offense or after," and thus "§ 924(c)(3)(B)'s narrower
language does not render it meaningfully different from the ACCA's residual clause under
*Johnson*"); *In re Pinder*, 824 F.3d 977, 978-79 (granting a request for a second or successive
§ 2255 motion where the petitioner challenged his conviction under § 924(c)(3)(B), the court
recognized that "[t]hough § 924(c) is phrased a bit differently from § 924(e), the § 924(c)
language also requires courts to decide if the offense in question 'naturally involve[s] a person
acting in disregard of the risk that physical force might be used against another in committing an
offense.'") (quoting *Leocal*, 543 U.S. at 10).

25
26
27
28
        Finally, the government itself in *Johnson II* conceded that "[a]lthough Section 16 refers
to the risk that *force* will be used rather than that *injury* will occur, it is equally susceptible to
petitioner's central objection  to the residual clause:  Like the ACCA, Section 16 requires a court
to identify the ordinary case of the commission of the offense and to make a commonsense

1  judgment about the risk of confrontations and other violent encounters." Supplemental Brief for

2  Respondent, at 22-23, *Johnson v. United States*, 135 S. Ct. 2551 (No. 13-7170).  In other words,

3  the government is taking the opposite position here from what it argued to the Supreme Court in

4  *Johnson II*.  The government was right the first time; given the rationale of the Supreme Court's

5  holding in *Johnson II*, the textual differences between the residual clauses codified at § 924(e)

6  and § 924(c) are immaterial – they both require the application of an abstract risk-based standard

7  to a hypothetical ordinary case that cannot possibly comport with the Constitution's guarantee of

8  due process.

9           c.      **The Constitutionality of a Statute is Not Determined by the
10                     Degree of Difficulty the Supreme Court Has Historically Had
                       Interpreting It**.

11

12       When confronted with the same argument that the government is making here, the Ninth

13 Circuit dismissed it, observing that "[w]e can discern very little regarding the merits of an issue

14 from the composition of the Supreme Court's docket.   The Court has repeatedly indicated that a

15 denial of certiorari means only that, for one reason or another which is seldom disclosed, and not

16 infrequently for conflicting reasons which may have nothing to do with the merits and certainly

17 may have nothing to do with any view of the merits taken by a majority of the Court," the Court

18 denied the request for certiorari.  *Dimaya*, 803 F.3d at 1119.  *See, e.g., Shuti*, 2016 U.S. App.

19 LEXIS 12500, at 23 ("the government mistakes a correlation for causation; conflicting judicial

20 interpretations only provide ex post 'evidence of vagueness.' *Johnson*, 135 S. Ct. at 2558");

21 *Vivas-Ceja*, 808 F.3d at 723 (" The chaotic state of the caselaw was not a necessary condition to

22 the Court's vagueness determination.").

23          d.      **Under the Categorical Approach, the Residual Clause is Either
24                     Unconstitutional in All Applications, or None**.

25       By definition, the categorical approach does not permit a court to look at the facts

26 concerning how a particular defendant committed an offense.  *Descamps v. United States*, 133 S.

27 Ct. 2276, 2285 (2013).  "Distinguishing between elements and facts is . . . central to [the

28 categorical approach]").  *Mathis v. United States*, 136 S. Ct. 2243, 2248 ( 2016).  Accordingly,

without regard to the facts of a particular case, an offense is either a crime of violence or it is not. *See, e.g.*, *Dominguez-Maroyoqui*, 748 F.3d at 920 ("Under the categorical approach, the crime-of-violence determination 'function[s] as an on-off switch': An offense qualifies as a crime of violence 'in all cases or in none.'") (internal quotations omitted).

Accordingly, the government's argument that "even if some theoretical defendant could claim that 924(c)(3)(B) is vague as applied to him," the Petitioner "is simply not that person," is specious. As the Ninth Circuit observed, "[n]othing in *Johnson* . . . suggests that the Court considered the constitutionality of ACCA's residual clause in reference to the crime Johnson actually committed. To the contrary, the Court . . . held in absolute terms that 'imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process.' *Johnson*, 135 S. Ct. at 2563. *Johnson* therefore clearly holds that the residual clause is unconstitutionally vague in all instances, not just for some subset of crimes." *Dimaya*, 803 F.3d at 1115 n.6. Indeed, the Ninth Circuit has unequivocally rejected the argument that the government makes here, explaining that even if there were some 'straightforward cases' that on their facts would qualify as a crime of violence under a residual clause drafted with the language of § 924(c)'s residual clause, "*Johnson* squarely rejected the argument that 'a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp,' *id*. at 2561-62, and clearly stated that the residual clause was void for vagueness in all applications, *id*. at 2563." *Dimaya*, 803 F.3d at 1119 n.15.

Because in the Ninth Circuit whether an offense qualifies as a crime of violence under § 924(c)(3)(B) must be assessed under the categorical approach, the government cannot concede that § 924(c)(3)(B) might be unconstitutionally vague as to someone, but not Petitioner; § 924(c)(3)(B) is unconstitutionally vague in all applications because, just like the residual clause at issue in *Johnson II*, it requires courts to hypothesize as to what constitutes the ordinary offense and then layer on top of that abstraction an unguided assessment as to how to measure the risk posed by a crime and to measure the amount of risk necessary to qualify an offense as a crime of violence. *Johnson*, 135 S. Ct. at 2558 ("By combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as

a violent felony, the residual clause produces more unpredictability and arbitrariness than the

Due Process Clause tolerates.").

> **e.** **The Unconstitutionality of § 924(c)'s Residual Clause Does Not Call Into Question the Application of Qualitative Standards to Real World Conduct Any More than the Unconstitutionality of § 924(e)'s Residual Clause Did.**

As the Ninth Circuit explained in *Dimaya*, analyzing a residual clause with the exact same

language as the one at issue here:

> In many circumstances, of course, statutes require judges to apply
> standards that measure various degrees of risk. . . . The vast majority of
> those statutes pose no vagueness problems because they 'call for the
> application of a qualitative standard such as 'substantial risk' to real-
> world conduct.' *Johnson*, 135 S. Ct. at 2561. The statute at issue in
> *Johnson* was not one of those statutes, however. Nor is the provision at
> issue here. If the uncertainty involved in describing the 'ordinary case'
> of a crime was not enough, its combination with the uncertainty in
> determining the degree of risk was. . . . As with ACCA's residual
> clause, § 16(b)'s definition of a crime of violence, combines
> 'indeterminacy about how to measure the risk posed by a crime with
> indeterminacy about how much risk it takes for the crime to qualify as'
> a crime of violence. 135 S. Ct. at 2558.

*Dimaya*, 803 F.3d at 1116-17. Just like with ACCA's residual clause, whether an offense

qualifies as a crime of violence under § 924(c)'s residual clause is not based on the assessment of

real-world facts. It does not matter what the defendant did or did not do in the course of

committing the offense; all that matters is how a particular judge envisions how the offense of

conviction is ordinarily committed, and how that judge perceives the level of risk that physical

force will be used in the course of committing the offense as he or she imagines it is ordinarily

committed. In other words the qualitative assessment demanded of courts vis-à-vis the residual

clauses codified both at § 924(e), as well as § 924(c), are not sufficiently bounded to comport

with the requirements of the Constitution's guarantee of due process. This contrasts sharply with

a typical statute demanding a qualitative risk analysis in which "courts . . . evaluate the record to

determine whether a defendant actually engaged in violence" that generates the risk of physical

force or injury. *Id.* at 1117 n.8; *see, e.g.*, *Shuti*, 2016 U.S. App. LEXIS 12500, at 15, 20

(explaining that the residual clause codified at § 16(b) does not involve the typical application of

a qualitative standard to real-world conduct, but rather "mandates a categorical mode of analysis that deals with 'an imaginary condition other than the facts,'" and because of the inherent indeterminacy of how to measure the risk posed in the context of a hypothesized ordinary case, "we cannot avoid the conclusion that the INA's residual clause falls squarely within *Johnson*'s core holding").

Accordingly, notwithstanding minor textually differences, because the mode of analysis for assessing whether an offense qualifies as a crime of violence, *i.e.*, the categorical approach which looks at elements and not real-world facts, is the same under § 924(c) as it is under § 924(e), the residual clause of § 924(c) suffers from the same constitutional infirmities as the residual clause struck down by the Supreme Court in *Johnson II*.  Because Bustos' conviction under 18 U.S.C. § 1201(a)(1) does not satisfy the elements test of § 924(c)(3)(A), and because § 924(c)(3)(B) is unconstitutionally vague, Bustos' conviction under § 924(c) cannot stand.

> **C.     Because *Johnson II* Announced a New Rule that is Applicable to the Residual Clause of 18 U.S.C. § 924, Bustos' § 2255 Motion is Timely.**

To the extent that the government is arguing that Bustos' § 2255 motion is untimely because *Johnson II* did not announce a new rule made retroactively applicable to cases on collateral rule for purposes of satisfying § 2255(f)(3), it is wrong.

"*Johnson* . . .  struck down part of a criminal statute that regulates conduct and prescribes punishment.  It thereby altered the range of conduct or the class of persons that the law punishes. . . . It follows that *Johnson* announced a substantive rule that has retroactive effect in cases on collateral review."  *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016).  The government argues that because *Johnson II* applied to the Armed Career Criminal Act ("ACCA"), its holding does not extend to the residual clause of 18 U.S.C. § 924(c)(3)(B), which suffers from the same infirmities as the residual clause codified at 18 U.S.C. § 924(e)(2)(B)(ii) that was struck down by *Johnson II* as unconstitutionally vague.  The government's argument is short on legal analysis and rests on a misunderstanding of federal law.

As a preliminary matter, the government cannot credibly argue that *Johnson II* is limited

1    to ACCA cases where it has repeatedly conceded that *Johnson* applies to the residual clause

2    contained in the U.S. Sentencing Guidelines. *See, e.g., United States v. Torres*, __ F.3d__, 2016

3    U.S. App. LEXIS 12941, *2 (9th Cir. 2016) (accepting "the government's concession that the

4    district court sentenced the defendant to a provision in the Sentencing Guidelines that is

5    unconstitutionally vague"); *United States v. Benavides*, 617 F. App'x 790 (9th Cir. 2015)

6    (vacating and remanding for resentencing in light of government's concession that *Johnson II*

7    applies to the Guidelines); *United States v. Sheffield*, ___ F.3d___, 2016 U.S. App. LEXIS

8    14826, *35 (D.C. Cir. 2016) (observing that "the government has consistently conceded that the

9    residual clause of the career offender guideline is unconstitutionally vague [and] [t]hat

10   concession makes ample sense");  *United States v. Pawlak*, 822 F.3d 902, 904 (6th Cir. 2016)

11   (noting the government's concession that "*Johnson*'s reasoning applies equally to the Guidelines,

12   and [the defendant's] sentence should be vacated"); *United States v. Soto-Rivera*, 811 F.3d 53,

13   59 (1st Cir. 2016) (acknowledging and applying government's concession that Section 4B1.2's

14   residual clause is void post-*Johnson II*); *United States v. Taylor*, 803 F.3d 931, 932-33 (8th Cir.

15   2015) (per curiam) (remanding for resentencing in light of government's concession that Career

16   Offender sentence should be vacated).

17       Notably, *Johnson II* announced a rule of general application when it held that the

18   ACCA's residual clause was unconstitutionally vague because it combined the indeterminate

19   inquiry of "how to measure the risk posed by a crime" in the ordinary case with "indeterminacy

20   about how much it takes for the crime to qualify as a violent felony."  *Johnson*, 135 S. Ct. at

21   2558.  "Where the beginning point is a rule of . . . general application, a rule designed for the

22   specific purpose of evaluating a myriad of factual contexts, it will be the infrequent case that

23   yields a result so novel that it forges a new rule, one not dictated by precedent."  *Tanner v.*

24   *McDaniel*, 493 F.3d 1135, 1144 (9th Cir. 2007) (internal quotations and citation omitted); *see,*

25   *e.g.*, *Butler v. Curry*, 528 F.3d 624, 634 (9th Cir. 2008) ("*Teague* does not . . . require a habeas

26   petitioner to show that the Supreme Court has decided a case involving identical facts,

27   circumstances, and legal issues. . . . Rather, when a general rule must be applied in a new

28   situation, it can hardly be thought to have created a new principle of constitutional law.")

1    (internal quotations and citation omitted).

2        The Supreme Court case, *Stringer v. Black*, 503 U.S. 222 (1992), is particularly

3    instructive.  As the Court explained, in *Godfrey v. Georgia*, 446 U.S. 420 (1980) the Court held

4    that Georgia's use of the aggravating factor "outrageously or wantonly vile, horrible and

5    inhuman" to impose the death penalty was unconstitutionally vague.  *Id*. at 228.  Later, in

6    *Maynard v Cartwright*, 486 US 356 (1988), the Court applied "the same analysis and reasoning"

7    to strike down Oklahoma's aggravating factor that made someone death-eligible if the killing

8    "was especially heinous, atrocious, or cruel."  *Id*.  Even though the statutes involved in *Godfrey*

9    and *Maynard* came from different states and involved significantly different language, the

10   reasoning and analysis that the Court used to find them both unconstitutionally vague was the

11   same, and thus *Maynard* did not announce a new rule:

12           In the case now before us Mississippi does not argue that *Maynard*
             itself announced a new rule.  To us this appears a wise concession.
13           *Godfrey* and *Maynard* did indeed involve somewhat different
             language.  But it would be a mistake to conclude that the vagueness
14           ruling of *Godfrey* was limited to the precise language before us in that
             case.  In applying *Godfrey* to the language before us in *Maynard*, we
15           did not 'break new ground.' . . .  *Maynard* was, therefore, for
             purposes of *Teague*, controlled by *Godfrey*, and it did not announce a
16           new rule.

17   *Id*. at 228-29.

18       Not surprisingly, courts have had no difficulty concluding that "the same analysis and

19   reasoning" that led the Court to hold that the residual clause of the ACCA was unconstitutionally

20   vague, applies with equal force to similarly worded residual clauses in different contexts.   For

21   example, several circuit courts have held that *Johnson II* invalidates the residual clause codified

22   in the Guidelines at U.S.S.G. § 4B1.2.  *See Sheffield*, 2016 U.S. App. LEXIS 14826, at 35;

23   *Pawlak*, 822 F.3d at 904.  And, more significantly for these purposes, several circuit courts,

24   including the Ninth Circuit, have held that the residual clause codified at 18 U.S.C. § 16(b),

25   which is identical to the residual clause at issue here, is unconstitutionally vague under *Johnson*

26   *II*.  *See Dimaya,* 803 F.3d at 1119; *Golicov*, 2016 U.S. App. LEXIS 17121, at 17; *Shuti*, 2016

27   U.S. App. LEXIS 12500, at 1; *Vivas-Ceja*, 808 F.3d at 723.

28

1    Not surprisingly, the Ninth Circuit is routinely granting petitioners' requests to file a

2    second or successive § 2255 motion challenging the constitutionality of their § 924(c)

3    convictions following *Johnson II*.  *See, e.g., Berry*, 2016 U.S. App. LEXIS 12176, at 12-13

4    (concluding that the petitioner "relies on a *new rule* of constitutional law and states a cognizable

5    claim that under the *new rule* his § 924(c) convictions involved trial error that violated his Fifth

6    and Sixth Amendment Constitutional rights") (emphasis added); *Hughes v. United States*, #16-

7    7139 (9th Cir. 2016), Dkt. Entry 2-1 (same); *Burton v. United States*, #16-70740 (9th Cir. 2016),

8    Dkt. Entry 2-1 (same).  Clearly, the Ninth Circuit recognizes that *Johnson II* articulated a new

9    rule that can be applied in the context of § 924(c).  *See, e.g.*, *In re Pinder*, 824 F.3d at 978-79

10   (listing other circuits that have likewise concluded that § 924(c) and § 924(e) are sufficiently

11   similar that the rule announced in *Johnson II* would, if applicable, extend to § 2255 petitions

12   based on *Johnson II* in § 924(c) cases).

13   Because *Johnson II* announced a new rule of constitutional law, the statute of limitations

14   on Bustos' claim commenced on June 26, 2015, the day the Supreme Court announced its

15   decision in *Johnson II*.  His motion to vacate is therefore timely under 18 U.S.C. § 2255(f)(3).

16   **III.   CONCLUSION**

17   For these reasons, Mr. Bustos requests that the Court grant his motion for relief under 28

18   U.S.C. § 2255, and vacate his conviction under 18 U.S.C. § 924(c).

19

20   Dated: September 30, 2016                    Respectfully submitted,

21                                                HEATHER E. WILLIAMS
22                                                Federal Defender

23                                                */s/ Peggy Sasso*
                                                 PEGGY SASSO
24                                                Assistant Federal Defender
                                                 Attorney for Defendant-Petitioner
25                                                JUSTO MATA BUSTOS

26

27

28

**CERTIFICATE OF SERVICE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 1:08-cr-0297 LJO |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JUSTO MATA BUSTOS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

I, the undersigned hereby certify that I am an employee of the Office of the Federal Defender for the Eastern District of California and a person of such age and discretion as to be competent to serve papers. I certify that on September 30, 2016, I electronically filed:

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S 28 U.S.C. § 2255 MOTION** by using the CM/ECF System.

Participants in the case who are registered CM/ECF users were served by the CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing documents by First-Class Mail, postage prepaid, to the following non-CM/ECF participants:

Justo Mata Bustos, #64211-097
D. Ray James Correctional Institution
P.O. Box 2000
Folkston, GA  31537-9000

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 30th day of September, 2016, at Fresno, California.

/s/ *Delia Rivera-Stark*
DELIA RIVERA-STARK