UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Respondent,<br><br>v.<br><br>JUSTO MATA BUSTOS,<br><br>Defendant-Petitioner. | CASE NO. 1:08-CR-297-LJO-3<br><br>MEMORANDUM DECISION AND ORDER GRANTING PETITIONER'S § 2255 MOTION; SETTING BRIEFING SCHEDULE; SETTING RE-SENTENCING HEARING<br><br>(ECF NO. 63) |

Before the Court is Petitioner Justo Mata Bustos's ("Petitioner" or "Bustos") motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, filed on June 22, 2016 (ECF No. 63). The Government filed its opposition on August 3, 2016 (ECF No. 70), and Petitioner filed a reply on September 30, 2016 (ECF No. 71). Having considered the parties' briefing and the record in this case, the Court GRANTS Petitioner's motion.

## I.   BACKGROUND

On October 8, 2009, Petitioner was sentenced to a total term of 171 months imprisonment after pleading guilty to two counts on a three-count indictment: 87 months for Count 2, kidnapping, in violation of 18 U.S.C. § 1201(a)(1), to be served consecutively with 84 months for Count 3, brandishing a firearm during a crime of violence, under 18 U.S.C. § 924(c)(1)(A). ECF Nos. 49 & 50. At sentencing, the Court adopted the finding in the Presentence Report ("PSR") that Petitioner's total offense level was 29 (after a three-point adjustment for acceptance of responsibility from a base offense level of 32). PSR ¶ 53. With a criminal history category of I, the Guidelines range for Petitioner was 87 to 108 months, to run consecutively with an additional term of 84 months, pursuant to 18 U.S.C. § 924(c)(1)(A). *See id.* On October 26, 2009, the Court entered a judgment sentencing Petitioner to 171 months in prison. ECF No. 50.

## II. LEGAL FRAMEWORK

### A. 28 U.S.C. § 2255

Section 2255 provides four grounds upon which a sentencing court may grant relief to a petitioning in-custody defendant:

> [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack … .

28 U.S.C. § 2255(a). Generally, it is only a narrow range of claims that fall within the scope of § 2255. *United States v. Wilcox*, 640 F.2d 970, 972 (9th Cir. 1981). The alleged error of law must be "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)).

### B. *Johnson II* and *Welch*

Pursuant to the Armed Career Criminal Act ("ACCA"), a defendant must be sentenced to a mandatory minimum of 15 years to life in custody if he has three prior convictions for "a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e)(1). The ACCA defines "violent felony" as any crime punishable by imprisonment for a term exceeding one year that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

18 U.S.C. § 924(e)(2)(B) (emphasis added). Courts generally refer to the first clause, § 924(e)(2)(B)(i), as the "elements clause"; the first part of the disjunctive statement in (ii) as the "enumerated offenses clause"; and its second part (starting with "or otherwise") as the "residual clause." *Johnson v. United States*, 135 S. Ct. 2551, 2556-57, 2563 (2015) ("*Johnson II*"); *United States v. Lee*, 821 F.3d 1124, 1126 (9th Cir. 2016).

In *Johnson II*, the Supreme Court held that "imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process," on the basis that "the indeterminacy of the wide-ranging inquiry required by the residual

clause both denies fair notice to defendants and invites arbitrary enforcement by judges." 135 S. Ct. at 2557, 2563. "Two features of the residual clause conspire to make it unconstitutionally vague." *Id.* at 2557. First, "the residual clause leaves grave uncertainty about how to estimate the risk posed by a crime" by "t[ying] the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." *Id.* Second, "[b]y combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.* at 2558.

Recently, the Supreme Court held that its decision in *Johnson II* announced a new substantive rule that applies retroactively to cases on collateral review. *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016). "By striking down the residual clause for vagueness, [*Johnson II*] changed the substantive reach of the Armed Career Criminal Act, altering the 'range of conduct or the class of persons that the [Act] punishes." *Id.* at 1265 (quoting *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004)). As a result, defendants sentenced pursuant to the ACCA residual clause can collaterally attack their sentences as unconstitutional under § 2255. *See, e.g.*, *United States v. Heflin*, ___ F. Supp. 3d ___, 2016 WL 3906895 (E.D. Cal. July 18, 2016).

**C.    Sentencing Enhancements Pursuant to 18 U.S.C. § 924(c)(1)(A)**

18 U.S.C. § 924(c)(1)(A) provides, *inter alia*, that any person who in relation to any "crime of violence" uses or carries a firearm, shall in addition to the punishment provided for such "crime of violence," be sentenced to a term of imprisonment of not less than five years, to run consecutively with the punishment for the underlying "crime of violence." If a firearm is brandished in the course of committing the "crime of violence," the consecutive term of imprisonment shall be not less than seven years (84 months). 18 U.S.C. § 924(c)(1)(A)(ii). If a firearm is discharged, the consecutive term of imprisonment shall be not less than ten years. *Id.* § 924(c)(1)(C)(A)(iii).

For purposes of 18 U.S.C. § 924(c)(1)(A), a "crime of violence" is defined as an offense that is a felony and –

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

3

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). "Courts generally refer to the '(a)' clause of section 924(c)(3) as the 'force clause' and to the '(b)' clause of section 924(c)(3) as the 'residual clause.'" *United States v. Bell*, 153 F. Supp. 3d 906, 910 (N.D. Cal. 2016).

## III. DISCUSSION

Petitioner challenges his sentence on the basis that kidnapping, in violation of 18 U.S.C. § 1201(a)(1), can no longer be deemed a "crime of violence" under § 924(c)'s residual clause, in light of the Supreme Court's decision in *Johnson II*, 135 S.Ct. at 2563 (2015) that the residual clause of the ACCA is unconstitutionally vague. ECF No. 63 at 8.[1] Petitioner argues that the difference between the residual clause contained in § 924(c) and the residual clause contained in the ACCA is "immaterial," and that the § 924(c)(3) residual clause is likewise constitutionally vague and cannot support his conviction and sentence under § 924(c). *Id*. at 8-9. In support of this argument, Petitioner relies upon *Dimaya v. Lynch*, in which the Ninth Circuit held that the residual clause contained in 18 U.S.C. § 16(b), which is identical to the residual clause of § 924(c)(3)(B), is unconstitutionally vague after *Johnson II*. *Id.* (citing 803 F.3d 1110, 1120 (9th Cir. 2015)). Furthermore, Petitioner argues that his § 1201(a)(1) conviction cannot be deemed a "crime of violence" under the force clause of § 924(c) because a conviction under § 1201(a)(1) does not necessarily involve the use, attempted use, or threatened use of physical force. *Id.* at 12-13. Finally, Petitioner contends that his motion is timely because *Johnson II* announced a new, substantive, and retroactive rule, and because a sentence under § 924(c) "operates the same way as an ACCA sentence," as he filed his motion within one year of the date on which the Supreme Court issued its decision in *Johnson II*. *Id.* at 14-18.

In its opposition, the Government sets forth several arguments as to why Petitioner is not eligible for relief under § 2255. ECF No. 70. The Government's main argument is that *Johnson II* did not invalidate the residual clause of § 924(c)(3) and that a § 1201(a)(1) conviction is therefore still a "crime of violence" for purposes of § 924(c). *Id.* at 8. In support of this argument, the

---

[1] Pincites refer to CM/ECF pagination located at the top of each page.

4

Government points to various distinctions between the residual clause of the ACCA and the § 924(c)(3) residual clause. *Id.* at 8-14. The Government further argues: (1) that a § 1201(a)(1) conviction is a crime of violence under the "force clause" contained in § 924(c)(3)(A), *id.* at 3-6; (2) that the categorical approach is unnecessary for § 924(c) purposes, *id.* at 15-17;(3) that *Dimaya* does not apply to § 924(c)(3), *id.*, at 17-18; and (4) that Petitioner's motion is time-barred, *id.* at 18-19.

### A. Whether *Johnson II* Invalidates the § 924(c)(3) Residual Clause

The foundational issue in this case is the applicability of *Johnson II* to the § 924(c)(3) residual clause—and more specifically, whether *Dimaya* compels the Court to find that *Johnson II* invalidates the § 924(c)(3) residual clause. In *Dimaya*, an immigration case that concerned whether a non-citizen's state law conviction rendered him removable for being convicted of an "aggravated felony," the Ninth Circuit considered whether language similar to the ACCA's residual clause incorporated into the definition of aggravated felony at 18 U.S.C. § 16(b) was unconstitutionally vague after *Johnson II*. 803 F.3d at 1111. *Dimaya* began the relevant analysis by noting the similarities between 18 U.S.C. § 16(b) and the ACCA's residual clause. Under 18 U.S.C. § 16(b), a crime of violence is an "offense that is a felony and that, by its nature, *involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense*." (emphasis added). "The language in the ACCA that [*Johnson II*] held unconstitutional is similar. The ACCA provision defined a 'violent felony' as 'any crime punishable by imprisonment for a term exceeding one year [i.e., a felony] … that … *involves conduct that presents a serious potential risk of physical injury to another*." *Dimaya*, 803 F.3d at 1114 (quoting 18 U.S.C. 924(e)(2)(B)(ii) (emphasis in original)). After analyzing 18 U.S.C. § 16(b) in light of the Supreme Court's reasoning in *Johnson II*, the *Dimaya* court concluded as follows:

> In [*Johnson II*], the Supreme Court held that ACCA's residual clause 'produces more unpredictability and arbitrariness than the Due Process Claus tolerates' by 'combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony. 135 S. Ct. at 2558. Although the government can point to a couple of minor distinctions between the text of the [ACCA] residual clause and that of [section 16(b)], none undermines the applicability of [*Johnson II*]'s fundamental holding to this case. As with the ACCA, section 16(b) … requires courts to 1) measure the risk by an indeterminate standard of a 'judicially imagined 'ordinary case,'' not by real world-facts or

5

statutory elements and 2) determine by vague and uncertain standards when a risk is sufficiently substantial. Together, under [*Johnson II*], these uncertainties render [section 16(b)] unconstitutionally vague.

*Id.* at 1120.

On this basis, Petitioner urges the Court to find that the § 924(c)(3) residual clause is likewise unconstitutionally vague under *Johnson II*. ECF No. 63 at 9. Upon review of *Dimaya* and all of the district courts in this circuit applying *Dimaya* to the § 924(c)(3) residual clause, and the fact that the language that *Dimaya* found to be unconstitutional is *identical* to the § 924(c)(3) residual clause, the Court agrees with Petitioner. Relying on *Dimaya*, three district courts in this circuit have found that *Johnson II* renders the § 924(c)(3) residual clause unconstitutional, in the context of ruling on defendants' motions to dismiss certain charges in their indictments. *Bell*, 158 F. Supp. 3d at 922-23 (finding that under *Johnson II*, the § 924(c)(3) residual clause "cannot stand" because like the ACCA residual clause, it requires the application of the categorical approach, and "the differences in the language used in the ACCA residual clause versus the § 924(c)(3) residual clause are not material insofar as the reasoning in *Johnson II* is concerned."); *United States v. Lattanaphom*, 159 F. Supp. 3d 1157, 1164 (E.D. Cal. 2016) (same); *United States v. Baires-Reyes*, ___ F. Supp. 3d ___, 2016 WL 3163049 (N.D. Cal. June 7, 2016) (same). At least one district court has applied the reasoning of *Dimaya* to find that § 924(c) is unconstitutional in the context of a § 2255 motion. *United States v. Shumilo*, No. CV 16-4412-GW, 2016 WL 6302524, at *7 (C.D. Cal. Oct. 24, 2016) ("the Court would find that [*Johnson II*] applies to the residual clause in § 924(c), thereby invalidating it"). In each of these cases, courts have emphasized that both the ACCA residual clause at issue in *Johnson II* and the § 924(c)(3) residual clause require the application of the categorical approach[2], which creates indeterminacy in light of statutory language that fails to provide "any reliable way to choose between these competing accounts of what a crime looks like in the ordinary case," as noted by *Johnson II*, 135 S. Ct. at 2558. *See Bell*, 158 F. Supp. 3d at 923;

---

[2] Because it is indisputable that the Ninth Circuit requires the application of the categorical approach for purposes of § 924(c), the Court rejects the Government's baseless assertion, ECF No. 70 at 15-16, that "the categorical approach is unnecessary for a district court to determine whether a present crime committed contemporaneously with a firearm is a crime of violence." *See United States v. Amparo*, 68 F.3d 1222, 1225 (9th Cir. 1994) ("The legislative history to section 924(c) indicates that Congress intended a categorical approach to the 'crime of violence' language in subsection (3)(B).").

6

*Lattanaphom*, 159 F. Supp. 3d at 1162; *Baires-Reyes*, 2016 WL 3163049, at *5; *Shumilo*, 2016 WL 6302524, at *5. "Section 924(c) then requires an analysis of whether there is a 'substantial risk that physical force' will be used, but 'with no more guidance than does the ACCA provision as to what constitutes a substantial enough risk of force to satisfy the statute.'" *Baires-Reyes*, 2016 WL 3163049, at *5 (quoting *Dimaya*, 803 F.3d at 1117). There is no reason for this Court to digress from the consensus among courts in this circuit that the § 924(c)(3) residual clause is unconstitutional in light of *Johnson II*.

The Government's arguments to the contrary are unavailing, as they have all been squarely foreclosed by *Dimaya*, which is binding[3] upon this Court. First, the Government argues that the § 924(c)(3) residual clause is distinguishable from the ACCA's residual clause because § 924(c)(3) contains no "confusing" list of enumerated offenses.[4] ECF No. 70 at 10-11. As to this argument, the Court notes that *Dimaya* observed that although *Johnson II* acknowledged that the enumerated offenses contributed to the uncertainty of the ACCA residual clause,

> the fundamental reason for the Court's holding was the residual clause's 'application of the 'serious potential risk' standard to an idealized ordinary case of the crime … [*Johnson II*] therefore made plain that the residual clause was void for vagueness in and of itself for the reasons stated in reaching its decision, and not because of the clause's relation to the four listed offenses."

802 F.3d at 1118. Second, the Government argues that § 924(c)(3)(B) is narrower than the ACCA's residual clause, in that § 924(c)(3)(B)'s "focus is limited to the defendant's potential use of force during his commission of the offense," while the ACCA's residual clause "looks broadly to whether injury will somehow be caused to another person during—or even after—the offense." ECF No. 70 at 11-13. However, in *Dimaya*, the Ninth Circuit expressed doubt that this difference in phrasing "actually creates a distinction between [the ACCA residual clause and the language in the residual

---

[3] That the Supreme Court has granted certiorari in *Dimaya* does not relieve this Court of its obligation to follow Ninth Circuit precedent unless and until the Supreme Court overrules *Dimaya*. *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001) ("Binding authority within this regime cannot be considered and cast aside; it is not merely evidence of what the law is. Rather caselaw on point *is* the law. If a court must decide an issue governed by a prior opinion that constitutes binding authority, the later court is bound to reach the same result [].").

[4] Under the ACCA, a violent felony was defined as any felony that is "burglary, arson, or extortion, or involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).

clauses of § 16(b) and § 924(c)(3)]." 803 F.3d at 1118. Moreover, the defect that renders the ACCA's residual clause unconstitutionally vague—that it combines the "indeterminate inquiry of 'how to measure the risk posed by a crime' in the ordinary case with the 'indeterminacy about how much risk it takes for the crime to qualify as a violent felony'" applies equally "whether the inquiry considers the risk of violence posed by the commission and the aftereffects of a crime [as with the ACCA residual clause], or whether it is limited to consideration of the risk of violence posed by acts necessary to satisfy the elements of the offense [as in the § 924(c)(3) residual clause]." *Id.* at 1118-19. Third, the Government argues that the Supreme Court has had less difficulty interpreting the § 924(c)(3) residual clause than it has had with the ACCA residual clause. ECF No. 70 at 13-14. As to this point, *Dimaya* noted "[t]hat the Supreme Court has decided more [ACCA] residual clause cases than § 16(b) cases, however, does not indicate that it believes the latter clause to be any more capable of consistent application. We can discern very little regarding the merits of an issue from the composition of the Supreme Court's docket." 803 F.3d at 1119.

The Court acknowledges that a footnote in *Dimaya* clarifies that its holding "does not reach the constitutionality of applications of 18 U.S.C. § 16(b) outside of [the immigration law context]," 803 F.3d at 1120 n. 17, there is a circuit split[5] as to this issue, and that courts outside the Ninth Circuit have declined[6] to apply *Johnson II* to find the § 924(c)(3) residual clause unconstitutional. Nevertheless, because *Dimaya* is binding upon this Court, and the language *Dimaya* held to be unconstitutionally vague is exactly the same as what is contained in the § 924(c)(3) residual clause, the Court finds it cannot escape the conclusion that the § 924(c)(3) residual clause is unconstitutionally vague,[7] and therefore cannot be the basis for enhancing a § 924(c)(1)(A) sentence. *See Dimaya*, 803 F.3d at 1120; *Bell*, 158 F. Supp. 3d at 922-923.

//

---

[5] *See United States v. Taylor*, 814 F.3d 340, 375-79 (6th Cir. 2016).

[6] *See, e,g.*, *United States v. Hunter*, Cr. No. 2:12-124-RAJ, 2015 WL 6443084, at *2-3 (E.D. Va. Oct. 23, 2015), *United States v. Tsarnaev*, Cr. No. 13-10200 GA), 157 F. Supp. 3d. 57, 72-73, 2016 WL 184389, at *13 (D. Mass. Jan. 15, 2016).

[7] For these reasons, the Court also rejects the Government's arguments, ECF No. 70 at 14-15 & 17-18, that Petitioner cannot pursue a vagueness challenge under § 924(c)(3)(B), and that *Dimaya* does not apply to the § 924(c)(3) residual clause.

### B.  Whether *Johnson II* is Retroactively Applicable in This Case

The Government does not dispute that *Johnson II* announced a substantive rule, but argues that *Johnson II* is only retroactively applicable to ACCA cases on collateral review. ECF No. 70 at 19. This position, which the Government fails to support with any substantive analysis, is untenable, given the Supreme Court's explicit holding in *Welch* that *Johnson II* is a "substantive decision and so has retroactive effect under *Teague*[8] in cases on collateral review." 136 S. Ct. at 1265. As explained above, the rule in *Johnson II* is substantive because it "alter[ed] the range of conduct or the class of persons that the law punishes." *Id.* Based on the reasoning set forth in *Welch*, courts throughout the Ninth Circuit (including this Court) have found that *Johnson II*'s retroactivity is not limited to cases involving the ACCA's residual clause, but have expanded its reach to cases that implicate similar language in section 4B1.2(a)(2) of the United States Sentencing Guidelines on the grounds that *Johnson II* altered the "range of conduct or class of persons" that the Guidelines punish. *See, e.g.*, *United States v. Casas*, No. 1:13-CR-00014-LJO-SKO, 2016 WL 6522740, at *5 (E.D. Cal. Nov. 2, 2016); *United States v. Garcia*, ___ F. Supp. 3d ___, 2016 WL 4364438, at *6 (N.D. Cal. Aug. 16, 2016) ("the Court concludes that Defendant's [*Johnson II*] is not barred by *Teague*'s anti-retroactivity principle because *Johnson* sets forth a substantive rule, which is retroactive even in the context of the Sentencing Guideline determinations."); *United States v. Dean*, 169 F. Supp. 3d 1097, 1119 (D. Or. 2016) ("[*Johnson II*] substantively changes the manner by which federal courts may enhance the sentence of a defendant under the Guidelines.").

These cases also rely upon *Reina-Rodriguez v. United States*, 655 F.3d 1182, 1189 (9th Cir. 2011), in which the Ninth Circuit considered whether its earlier decision *United States v. Grisel*, 558 F.3d 844 (9th Cir. 2007), should apply retroactively. *Grisel* held that second-degree burglary under Oregon law was not categorically a crime of violence for the purposes of determining whether a sentencing enhancement should apply under the ACCA. 488 F.3d at 850-51. In *Reina-Rodriguez*, the Ninth Circuit found that *Grisel* was a substantive rule that therefore also applied retroactively in the context of the Sentencing Guidelines because it "altered the conduct that substantively qualified as

---

[8] In *Teague v. Lane*, 489, U.S. 288 (1989), the Supreme Court laid out the test for determining whether one of its opinions should apply retroactively to a final judgment in a criminal case. Under *Teague*, a rule which is "substantive," meaning it "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," is retroactive. *Id.* at 311.

9

burglary under the categorical approach." 655 F.3d at 1189. Because *Reina-Rodriguez* "did not distinguish between *Grisel* in the ACCA context and *Grisel* in the Guidelines context," the Ninth Circuit thereby implicitly found "that a rule that is substantive in the first context is substantive in the second context." *Dean*, 169 F. Supp. 3d at 1118.

The reasoning from *Reina-Rodriguez* is applicable here, and the Court agrees with Petitioner's argument that following *Johnson II*, a sentence under § 924(c)(1)(A) "operates the same way as an ACCA sentence," in that it "authorizes a mandatory minimum sentence that would otherwise be illegal to impose." ECF No. 63 at 15. In light of the Court's determination, *supra*, that *Johnson II* invalidated the § 924(c)(3) residual clause, *Johnson II* "changed the substantive reach" of the sentencing enhancements authorized by § 924(c)(1)(A), and therefore, the Court finds that *Johnson II* is a substantive rule that applies retroactively in this context. *See Welch*, 136 S.Ct. at 1265; *Reina-Rodriguez*, 655 F.3d at 1189-1990; *see also Schriro*, 542 U.S. at 351 ("New substantive rules generally apply retroactively"). Thus, because *Johnson II* announced a new substantive rule retroactively applicable to § 924(c)(1)(A) cases on collateral review, and because Petitioner filed his § 2255 motion within one year of the date *Johnson II* was decided, Petitioner's motion is timely under § 2255(3)(f).

## C. Whether a § 1201(a)(1) Conviction is a "Crime of Violence" Under the § 924(c)(3) Force Clause

Petitioner's originally imposed 171-month sentence was premised upon the classification of his § 1201(a)(1) conviction as a "crime of violence" under § 924(c)(3). ECF No. 50; *see also* 18 U.S.C. § 924(c)(1)(A). Because the Court has found that the § 924(c)(3) residual clause "can no longer mandate or authorize any sentence," *see Welch*, 136 S. Ct. at 1265, Petitioner's sentence can only stand if his § 1201(a) conviction qualifies as a crime of violence under § 924(c)(3)'s force clause. *See, e.g.*, *Bell*, 158 F. Supp. 3d at 910-11. In *Bell*, a court in the Northern District of California confronted with the same type of inquiry, set forth the legal framework for doing so as follows:

> To determine whether an offense qualifies as a "crime of violence" under section 924(c)(3), the Ninth Circuit applies the "categorical approach" set forth in *Taylor v.*

10

*United States*, 495 U.S. 575 [] (1990). *See United States v. Piccolo*, 441 F.3d 1084, 1086–87 (9th Cir.2006) ("In the context of crime of violence determinations under section 924(c), our categorical approach applies regardless of whether we review a current or prior crime."); *United States v. Amparo*, 68 F.3d 1222, 1225-26 (9th Cir. 1995); *United States v. Mendez*, 992 F.2d 1488, 1490-92 (9th Cir. 1993); *United States v. Springfield*, 829 F.2d 860, 862–63 (9th Cir. 1987).

A court applying the categorical approach must "determine whether the [offense] is categorically a 'crime of violence' by comparing the elements of the [offense] with the generic federal definition"—here, the definition of "crime of violence" set forth in the section 924(c)(3) force clause. *United States v. Sahagun–Gallegos*, 782 F.3d 1094, 1098 (9th Cir. 2015). This process requires the court to "look to the elements of the offense rather than the particular facts underlying the defendant's own [case].*" United States v. Dominguez–Maroyoqui*, 748 F.3d 918, 920 (9th Cir. 2014). Because the categorical approach is concerned only with what conduct the offense necessarily involves, the court "must presume that the [offense] rest[s] upon nothing more than the least of the acts criminalized, and then determine whether even those acts are encompassed by the generic federal offense." *Moncrieffe v. Holder*, [] 133 S. Ct. 1678, 1684, (2013) (internal quotation marks and alterations omitted). If the elements of the offense "criminalize a broader swath of conduct" than the conduct covered by the generic federal definition, the offense cannot qualify as a crime of violence, even if the particular facts underlying the defendant's own case might satisfy that definition. *Dominguez–Maroyoqui*, 748 F.3d at 920 (internal quotation marks omitted).

In ascertaining the scope of conduct criminalized by the elements of an offense, the court considers not only the statutory language, "but also the interpretation of that language in judicial opinions." *Covarrubias Teposte v. Holder*, 632 F.3d 1049, 1054 (9th Cir. 2011) (internal quotation marks omitted). To find an offense overbroad, there must be a "realistic probability, not a theoretical possibility," that the statute would be applied to conduct not encompassed by the generic federal definition. *Gonzales v. Duenas–Alvarez*, 549 U.S. 183, 193 (2007); *accord United States v. McGuire*, 706 F.3d 1333, 1337 (11th Cir. 2013) (applying the "realistic probability" standard to a crime of violence determination under section 924(c)(3)).

In a case involving a "divisible" statute, the court may also go beyond the categorical approach and apply the "modified categorical approach," which allows the court "to examine a limited class of documents to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." *Descamps v. United States*, ––– U.S. ––––, 133 S. Ct. 2276 [] (2013) (internal quotation marks omitted). A statute is "divisible" when it contains "multiple, alternative elements of functionally separate crimes," *Rendon v. Holder*, 764 F.3d 1077, 1084–85 (9th Cir. 2014) (emphasis in original), as opposed to just "alternative means of committing the same crime," *Almanza–Arenas v. Lynch*, [815 F.3d 369, 477] (9th Cir. 2015). "[T]he key question [the court] must ask when determining a statute's divisibility is whether a jury would have to be unanimous in finding those separate elements." *Ramirez v. Lynch*, [810 F.3d 1127, 1134] (9th Cir. 2016).

11

[]. In *Johnson v. United States*, 559 U.S. 133 (2010) ("*Johnson I*"), the Supreme Court considered whether a conviction for simple battery under Florida law qualifies as a "violent felony" under the force clause of the [ACCA]. The ACCA force clause, like the section 924(c)(3) force clause, defines "violent felony" to include a felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(2)(B)(i). The Court held that to satisfy this definition, the physical force required by the offense must be "*violent* force—that is, force capable of causing physical pain or injury to another person." 559 U.S. at 140 (emphasis in original). The Court observed that "even by itself, the word 'violent' in section 924(e)(2)(B) connotes a substantial degree of force... When the adjective 'violent' is attached to the noun 'felony,' its connotation of strong physical force is even clearer." *Id*.

The Ninth Circuit has since extended this definition of "physical force" to other generic offense provisions, including 18 U.S.C. § 16(a) and U.S.S.G. § 2L1.2, both of which define "crime of violence" using language that is identical or essentially identical to that used in the ACCA force clause and the section 924(c)(3) force clause. *See, e.g.*, *United States v. Dominguez–Maroyoqui*, 748 F.3d 918, 920–21 (9th Cir.2014) (U.S.S.G. § 2L1.2); *United States v. Flores–Cordero*, 723 F.3d 1085, 1087 (9th Cir.2013) (U.S.S.G. § 2L1.2); *Rodriguez–Castellon v. Holder*, 733 F.3d 847, 854 (9th Cir.2013) (18 U.S.C. § 16(a)). A number of other courts have extended the *Johnson I* definition of "physical force" to the section 924(c)(3) force clause. *See, e.g.*, *United States v. Davis*, No. 15–cv–20564, 2015 WL 8311538, at *1 (E.D. Mich. Dec. 9, 2015); *United States v. Merinord*, No. 15–cr–00136, 2015 WL 6457166, at *3 (E.D.N.C. Oct. 26, 2015); *United States v. Cruz–Rivera*, No. 15–cr–00486, 2015 WL 6394416, at *1 (D.P.R. Oct. 21, 2015); *United States v. Evans*, No. 15–cr–00057, 2015 WL 6673182, at *4–5 (E.D.N.C. Oct. 20, 2015). []

158 F. Supp. 3d at 910-913.

Using this framework, the Court begins with the statutory language of 18 U.S.C. § 1201(a)(1), which provides, in relevant part:

Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense … shall be punished by imprisonment for any term of years or for life.

18 U.S.C. § 1201(a)(1). The Court notes that to date, there is no caselaw that directly addresses whether a § 1201(a)(1) conviction is categorically a crime of violence under the § 924(c)(3) force or any other similarly-worded statute or sentencing provision.

Thus, at this juncture, the Court's task is to compare the elements of a § 1201(a) conviction with those of the § 924(c) force clause, and determine whether § 1201(a)(1) necessarily "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *See Descamps*, 133 S. Ct. at 2283. "Distinguishing between elements and facts is [] central to the [categorical approach]'s operation." *See Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). "'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'" *See id.* (quoting Black's Law Dictionary 634 (10th ed. 2014)). There are three elements the Government must prove to convict a defendant of § 1201(a)(1): (1) the unlawful seizure, confinement, inveiglement, decoy, kidnapping, abduction, or carrying away of a victim; (2) holding that victim for ransom or reward or otherwise; (3) the willful transportation of that victim in interstate or foreign commerce, or the travel of the defendant in interstate or foreign commerce, or the defendant's use of mail or any means, facility, or instrumentality of interstate or foreign commerce during the course of the crime's commission. *United States v. Bancalari*, 110 F.3d 1425, 1428 (9th Cir. 1997). In this regard, the Court notes that each of the three elements in § 1201(a) "merely specif[y] diverse means of satisfying a single element of a single crime—or otherwise said, spells out various factual ways of committing some component of the offense—a jury need not find (nor a defendant admit) any particular item." *Mathis*, 136 S. Ct. at 2249. The first element is satisfied through various means: seizure, confinement, inveiglement, decoy, kidnapping, abduction, *or* carrying away. *See United States v. Etsitty*, 130 F.3d 420, 427 (9th Cir. 1997). The second element is satisfied through the defendant's holding of the victim for ransom *or* reward *or* otherwise. The third element is satisfied if the victim is transported in interstate commerce *or* if the defendant travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in the commission of the offense. Because § 1201(a)(1) presents a single set of elements that are satisfied through various means, rather than multiple alternative elements of functionally separate crimes, the Court finds that it is an indivisible statute such that the Court's inquiry is confined to the pure categorical approach. *See Rendon*, 764 F.3d at 1088. Under the categorical approach, the Court must "presume that the conviction 'rested upon [nothing] more than the least of th[e] acts criminalized, and then determine

13

whether even those acts are encompassed by [the § 924(c)(3) force clause]." *Moncrieffe*, 133 S. Ct. at 1684 (citing *Johnson I*, 559 U.S. at 137).

The Court now evaluates whether § 1201(a)(1) categorically falls within the § 924(c)(3) force clause. Given that the third element, relating to interstate commerce, has been found to "merely furnish[] the basis for the exercise of federal jurisdiction," rather than constitute a formal element of the crime, *United States v. Napier*, 518 F.3d 316, 319 (9th Cir. 1975), the Court's inquiry need only address the first two elements of § 1201(a)(1). As explained above, pursuant to the Supreme Court's decision in *Johnson I*, "physical force" for purposes of the § 924(c)(3) force clause must be "*violent* force—that is force capable of causing physical pain or injury to another person." *See Dominguez-Maroyoqui*, 748 F.3d at 921 (quoting *Johnson I*, 559 U.S. at 140); *Rodriguez-Castellon*, 733 F.3d at 854.

In regard to the first element, the Court notes that it may be satisfied without the use of physical, violent force, as contemplated by § 924(c)(3). While seizing, confining, or carrying a victim away could implicate the use of violent force, inveigling or decoying the victim do not. In *Delgado-Hernandez v. Holder*, the Ninth Circuit considered whether the full range of conduct covered by California's kidnapping statute, Cal. Penal Code. § 207(a), fell within the meaning of the force clause at 18 U.S.C. 16(a), which is identical to the § 924(c)(3) force clause. 697 F.3d at 1127. Cal. Penal Code § 207(a) provides that "every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, or detains or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping." In observing the plain text of this statute, *Delgado-Hernandez* concluded that "[b]ecause kidnapping under § 207(a) can be committed of 'any means of instilling fear' instead of by force, § 207(a) does not include 'the use of …physical force" as an element of the crime." 697 F.3d at 1127. Furthermore, the *Delgado-Hernandez* court observed that § 207(a) is "comparable" to § 1201(a), which it also described as lacking a "force requirement" because § 1201(a) also enumerates various means of satisfying its first element, not all of which require force. *Id.* at 1130. Therefore, *Delgado-Hernandez*'s holding that kidnapping under § 207(a) can be committed by "'any means of instilling fear" *instead of* by force, is applicable to § 1201(a)(1). *See id.* Similarly, in

14

*United States v. Sherbondy*, the Ninth Circuit held that kidnapping under the Model Penal Code, which defines kidnapping as "unlawfully remov[ing] another from his place of residence or business" did not include violent physical force as an element because "removal of a person through trickery or deceit can be as unlawful as abduction at gunpoint." 865 F.2d 996, 1009 (9th Cir. 1988). Accordingly, it found that a statutory provision identical to the § 924(c)(3) force clause did not apply to that definition of kidnapping. *Id. Delgado-Hernandez* and *Sherbondy* support the Court's finding that the first element of § 1201(a)(1) need not require the use of violent, physical force.

Next, the Court turns to the second element and evaluates whether "holding for ransom, or reward, or otherwise" necessarily involves the use of violent, physical force. Both parties cite to *Chatwin v. United States*, 326 U.S. 455, 460 (1946), in which the Supreme Court held that for purposes of satisfying this element of federal kidnapping, "[t]he act of holding a kidnapped person for a proscribed purpose necessarily implies an unlawful physical or mental restraint for an appreciable period against the person's will and with a willful intent so to confine the victim." The Government's position is that under *Chatwin*'s interpretation of the holding element, even if holding is accomplished through mental restraint, this will necessarily also entail the threat of physical force. ECF No. 70 at 4. Petitioner counters that the holding element can be satisfied without any threat of physical force, and that no circuit court has required proof beyond a reasonable doubt that a § 1201(a)(1) defendant used, attempted to use, or threatened the use of violent physical force to establish the holding element. ECF No. 71 at 12-14. Although there is support for both positions from courts outside this circuit, the Court agrees with Petitioner for two main reasons. First, the two published Ninth Circuit cases that have analyzed the elements of similarly-worded state kidnapping statutes and discussed § 1201(a)(1) in their dicta have discerned no force requirement in either the state statutes or in § 1201(a)(1). *Delgado-Hernandez*, as mentioned above, found no force requirement in California's kidnapping statute and in the course of its reasoning and discussion of other kidnapping statutes, stated that § 1201(a)(1) "has no force requirement." 697 F.3d at 1130. *United States v. Chandler*, the Ninth Circuit's most recent decision on the issue, found that Nevada's kidnapping statute, which it described as very similar to § 1201(a)(1), lacked a force requirement

and in support of its reasoning, cited the finding in *Delgado-Hernandez* that § 1201(a)(1) does not have a force requirement. 743 F.3d 648, 656-67 (9th Cir. 2014).[9]

Second, the confines of the categorical approach direct the Court to focus on the elements of the crime, and examine whether even the full range of acts encompassed by § 1201(a)(1) are within the reach of the § 924(c)(3) force clause. *Moncrieffe*, 133 S. Ct. at 1694; *see also Shepard v. United States*, 544 U.S. 13, 24 (2004) (a predicate offense is only a categorical match with the generic offense if a conviction of the predicate offense "necessarily" involved facts equating to the generic offense). The cases cited by Petitioner demonstrate that courts have found the holding element satisfied without the use or threat of physical violent force. ECF No. 71 at 12-14. For instance, although both parties cite to *United States v. Lentz*, 383 F.3d 191 (4th Cir. 2004), the Court finds that *Lentz* supports Petitioner's position in that the *Lentz* court viewed this second element as discrete from any violence that occurred during the commission of the crime. In *Lentz*, the defendant and the victim had one child together. *Id.* at 195. The defendant "inveigled" the victim to his house by telling her to pick up their child there, and upon her arrival, killed her. *Id.* at 195-198. Following a jury trial, in which a jury found the defendant guilty of § 1201(a), the district court granted the defendant's motion for judgment of acquittal, and the government filed a notice of appeal. *Id.* at 198-99. On appeal, the defendant argued that the government had failed to prove the holding element because "there was no evidence that [he] exerted any physical or mental force sufficient to effect a restraint upon her movements during the trip," in other words, arguing that the victim "was at all times 'perfectly free' to return to her home." *Id.* at 201. The Fourth Circuit concluded that "there was a logical and supporting evidentiary basis for the jury to conclude that [the victim] was 'held' by the defendant after she arrived at his house but before the fatal wounds were inflicted," because there was sufficient circumstantial evidence that after she arrived at the defendant's house, the defendant "*either physically forced or lured her inside or otherwise confined her against her will* for an appreciable period of time in order to accomplish the purpose of the seizure." *Id.* at 203 (emphasis added). Reasoning that although "the defense argues correctly that there is no direct evidence as to

---

[9] *Chandler* held that second-degree kidnapping under Nevada law could serve as a predicate offense for the ACCA under the (now unconstitutional) residual clause. 743 F.3d at 657. *Chandler* has since been vacated and remanded upon the parties' joint motion in light of *Johnson II. See United States v. Chandler*, 619 Fed. App'x 641, 642 (9th Cir. Oct. 9, 2015).

16

exactly what events occurred in the house preceding [the victim]'s murder," the Fourth Circuit found that the government's inability to produce direct evidence on this issue is not fatal to its case," because there was sufficient evidence for the jury to find that the defendant had "held" the victim against her will. *Id.* Because the Fourth Circuit held that circumstantial evidence that the victim was either "lured" or "otherwise confined against her will" satisfied the holding element, *Lentz* demonstrates that the second element does not require the use or threat of violent, physical force and therefore does not implicate the § 924(c)(3) force clause under the categorical approach. The approach in *Lentz* to the second element is echoed by two other courts, both of whom appear to analyze the holding element separately even in instances where the facts indicated that the defendants ultimately committed violent acts against the victims. *See, e.g.*, *United States v. Boone*, 959 F.2d 1550, 1556 (11th Cir. 2002) ("the mere fact that the kidnapper was not required to physically hold his victim prior to the crossing of state lines, thereby sparing himself the effort of using forcible action to accomplish the kidnapping, does not take his conduct outside of the statute"); *United States v. Hughes*, 716 F.2d 234, 239 (4th Cir. 1983) ("By inducing his victim by misrepresentations to enter his vehicle and to accompany him, and knowing that the victim's belief as to their purpose and destination is different from his actual illicit purpose, the kidnapper has interfered with, and exercised control over, her actions. We find this conduct sufficient to satisfy the 'involuntariness of seizure and detention' requirement of *Chatwin*.").

Based on the foregoing, the Court concludes that § 1201(a)(1) cannot serve as a predicate offense for § 924(c)(1)(A) because it does not categorically qualify as a crime of violence under the force clause of § 924(c)(3). *See Shepard*, 544 U.S. at 24. Therefore, Petitioner succeeds in showing that his sentence was imposed in violation of the Constitution, and the Court GRANTS his § 2255 petition and VACATES his sentence.

**IV.     CONCLUSION AND ORDERS**

Petitioner's conviction for kidnapping under § 1201(a)(1) exists, but does not qualify as crime of violence under § 924(c)(3) for the purposes of the § 924(c)(1)(A) sentencing enhancement provision. Because there is no longer a crime of violence supporting Petitioner's § 924(c)(1)(A) sentencing enhancement, Petitioner is entitled to habeas relief under 28 U.S.C. § 2255(a).

Accordingly, **IT IS HEREBY ORDERED:**

1. In light of *Johnson v. United States*, ___U.S. ___, 135 S. Ct. 2551 (2015), Petitioner Justo Mata Bustos's Motion to Vacate, Set Aside, or Correct Sentence pursuant to § 2255 (ECF No. 63) is **GRANTED**.

2. Petitioner's sentence pursuant to 18 U.S.C. § 924(c)(1)(A) (ECF No. 50) is **VACATED**.

3. Because this case will now proceed to resentencing, the Court assumes that trial counsel will return to represent Petitioner during his resentencing. Trial counsel Katherine Hart **SHALL** be served with this order.

4. In light of the Court's determination that § 1201(a)(1) can no longer serve as a predicate offense for a § 924(c)(1)(A) sentencing enhancement, the Government **SHALL** file a motion to dismiss Count 3 of the Indictment OR written notice that it will not move to dismiss Count 3 within **five (5) days** of electronic service of this Order. If the Government indicates it will not move to dismiss Count 3, Petitioner shall have **fourteen (14) days** from the date of the Government's filing to file an appropriate motion.

5. Within **forty-five (45) days** of electronic service of this Order, both parties **SHALL** file supplemental briefing on the issue of whether the Court is in any way restricted during the forthcoming resentencing hearing by the 87-month sentence it previously imposed for Petitioner's § 1201(a) conviction.

6. The United States Probation Office **SHALL** file a short supplement to the Presentence Report advising the Court of any relevant information pertaining to Petitioner's time in custody and including an updated Guidelines range in accordance with this Order (*i.e.*, presuming the non-existence of Count 3). Probation's supplement is due within **sixty (60) days** of electronic service of this Order.

7. The Court **ORDERS** that a resentencing hearing be set for **Monday, February 6, 2017 at 10:00 a.m.** before the undersigned. The parties **SHALL** file all further documents pertaining to resentencing on or before **January 30, 2017**.

IT IS SO ORDERED.

Dated:   **November 17, 2016**          /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE